### DEDEAUX *v.* STATE.

[87 South. 664. No. 21482.]

1. CRIMINAL LAW. *"Accomplice" defined; question for court whether witness was an "accomplice" when facts undsputed.*

   One who is present aiding, assisting, abetting, and encouraging the commission of a crime is an accomplice, and, where there is no conflict in the testimony as to the acts, conduct, or participation of a witness in an alleged crime, it is a question of law for the court as to whether the witness was in fact an accomplice.

2. CRIMINAL LAW. *Court should instruct as to weight of accomplice testimony, but language of instruction is in court's discretion.*

   While a conviction may be had on the uncorroborated testimony of an accomplice, the court should instruct the jury that the testimony of an accomplice is to be weighed with caution, but the language in which the cautionary instruction is stated must, in a large measure, be left to the discretion of the trial court.

3. CRRIMINAL LAW. *Larceny. Instruction omitting element of felonious or fraudulent taking error.*

Under section 1251, Code 1906 (Hemingway's Code, section 981), the word "felonious" as used in this section is not merely descriptive of the grade of the offense, but a felonious or fraudulent taking is necessary to constitute the crime of larceny, and an instruction which omits this essential element is erroneous.

4. CRIMINAL LAW.. *Evidence as to finding of other property similar to that stolen at different place held inadmissible.*

In a prosecution for the larceny of particularly described sheep, where the evidence shows that the sheep alleged to have been stolen had been killed and buried in a certain pit, it is erroneous to admit testimony that other sheep were found buried at a different place and in another pit.

5. CRIMINAL LAW. *That other sheep of same owner disappeared held inadmissible.*

In a prosecution for the larceny of particularly described sheep, it is error to admit testimony that several months prior to the alleged theft the owner of the particular sheep alleged to have been stolen also owned a large number of other sheep, and that they had disappeared from the range at the time of the trial.

APPEAL from circuit court of Stone county.

HON. D. M. GRAHAM, Judge.

Elmer Dedeaux was convicted of larceny of sheep, and he appeals. Reversed and remanded.

*Mize & Mize,* for appellant.

The attorney-general, in his last brief in this case, cites the following, taken from the case of *Crockford* v. *State,* 73 Neb. 1, to-wit: "The taking by one not the owner, into his possession, a calf running at large, with intent to convert it to his own use and deprive the owner of his property without his consent, constitutes the crime of actual stealing within the statute."

When this case is read, it will be found to be binding authority for appellant's contention, as the taking in or off the range of the calf in the Crockford case is very much

like the driving of the sheep off the range, in the instant case. The court at page 4, of the Crockford case uses the following language:

"There was really but one question for the jury to determine, and that was, whether, when the accused took the calf alleged to have been stolen into his possession he did so with the felonious intent to steal it, and these two instructions fairly submitted the issue to the jury as a question of fact which was its province to pass on."

The court, on reading the instructions, will find that the court in Nebraska, as in many other states, of its own motion instructed the jury on the general law applicable to the case, and, in both the instructions for the defendant and the state, the court emphasized that there had to be a felonious taking at the time, and further, that if the defendant took it, not with the intent to steal it, which embraces the felonious taking, and converted it to his own use after he had it in his possession, he would not be guilty of larceny. We know of no stronger case in support of our contention than the Crockford case.

The case of *Lamb* v. *State,* 40 Neb. 312, cited and commented on by the court in the *Crockford case, supra,* is a case of all fours with the instant case, where a hog was taken from the range into the possession of the appellant and the appellant was attempting to make away with it and share in the proceeds and was convicted of larceny, in which case the court said at the bottom of page 316, 40 Nebraska:

"That it was proper to submit in the form of an instruction and the court did submit an instruction, which told the jury that, in order to convict the defendant, he had to have the intent to steal at the time of taking the property. The intent to steal of course embraces all the elements of larceny."

Webster defines, "stealing" as "to take and carry away feloniously, to take without right or leave and with intent to keep wrongfully; as to steal the personal goods of another." This definition is adopted in the case of *Bald-*

*win* v. *State*, 35 So. 220. The primary meaning of the word "steal" is "to take and carry away feloniously." *State* v. *Minnick*, 102 Pac. 605, adopting the definition given by Webster.

The word "steal" or "stealing," in a criminal statute, when unqualified by the context, signifies a taking which at common law would have been denominated, felonious *Gardner* v. *State*, 26 Atl. 30. The elements of stealing at common law are the wrongful or fraudulent taking and removal of the personal property by trespass with the felonious intent to deprive the owner thereof and to convert the same to the taker's own use. *Barbe* v. *Territory*, 16 Okla. 562.

An indictment for larceny which merely alleges that accused feloniously did steal, take and carry away property described without alleging the intent to convert it, is sufficient, since the word "steal" means in common and legal parlance the felonious taking and carrying away of the personal goods of another. *State* v. *Perry*, 126 S. W. 717.

The word "steal" has a uniform significance, and in common as well as legal parlance means the felonious taking and carrying away of the personal goods of another. *State* v. *Richmond*, 128 S. W. 744. The word "steal" includes all the elements of larceny at common law. *Cohoe* v. *State*, 113 N. W. 532.

If the instruction had embodied the idea of taking with intent to steal the sheep in the instant case, it would have been unnecessary to use the word feloniously, but the instruction did not embrace this.

We lay down the proposition that no case will be found where the court holds that an instruction just alleging the defendant took property away with the intent to deprive the owner of it is sufficient as a statement of facts that would constitute larceny if believed by the jury. Of course, if it embodied the language that he stole the property or took it with intent to steal it, this would embrace feloniously and the statute of Mississippi defining grand larceny uses the word "feloniously."

Suppose the indictment had not used the word "feloniously," but just embraced the language of the instruction complained of. Then a demurrer to the indictment would be good; but the indictment in this case is good and an essential ingredient of the indictment is that the taking must have been felonious or fraudulent. Therefore, if the court holds that the instruction is good, it will be committed to the doctrine that you do not have to prove all the material elements of the indictment to convict the defendant, which is not and cannot be the law.

And, as to the contention that the jury had the right to look to the indictment to splice out the instruction, that is wholly untenable, because the indictment is a mere allegation and the instruction must be based on the proof. If it is true that the jury has to look to the indictment to splice out the instructions, then every erroneous instruction, where the indictment is good, could be spliced out and made a good instruction by supplying its deficiencies from the indictment; and we therefore submit that this court on this point, as well as on the other points discussed, is bound to reverse this case.

*W. M. Hemingway,* assistant attorney-general, for the state.

The first question for the consideration of the court is as to Vardaman Dedeaux being an accomplice. There is no testimony on this point but his. He had nothing to do with getting the sheep nor with bringing them home. It was Zeno's place. Consequently, the intent to take the property of Ladnier was missing. Ladnier was deprived of his property before the boy knew anything about it, and the property was in the possession of Elmer Dedeaux and his aiders, consequently the larceny was complete without his assistance or aid. Under the state of the case indictment could not have been found against Vardaman Dedeaux. His act was not ordinarily corrupt. 16 Corpus Juris, sections 1344, 1345, 1349, also section 1355.

The fact even that Vardaman Dedeaux had knowledge of the intended crime does not make him an accomplice. 16 Corpus Juris, section 1356.

Mere approval of the crime after the event does not constitute one an accomplice. The definition of larceny is elementary and the court will recognize the crime had been committed before Vardaman Dedeaux had anything to do with it. The presence of a person without the intent to do and abet their purpose of stealing does not make him guilty. *Hodgett* v. *The State,* 40 Miss. 522, 2 Mor. St. Cas. 1505; *McCarty* v. *State,* 26 Miss. 299; 1 Mor. St. Cas. 705.

This is conclusive that Vardaman Dedeaux was not an accomplice. The court, therefore, had the right to refuse to give instruction on the testimony of an accomplice.

In *Cheatham* v. *The State,* 67 Miss. 335, 7 So. 204, the court should not pile up words suggestive of the desire for the jury to dismiss as unworthy of consideration the testimony of the accomplice. *Wilson* v. *The State,* 71 Miss. 880.

A conviction may be had on the uncorroborated testimony of an accomplice. *Wilson* v. *State,* 71 Miss. 880; *Fitzcocx* v. *State,* 52 Miss. 923; *White* v. *State,* 52 Miss. 216; *Osborn* v. *State,* 55 So. 52; 16 Corpus Juris, page 696, section 1423 and Note 60 and 61.

Instruction on this subject, which was refused, page 39 of the record, the jury was told to regard the testimony of the accomplice with great care, caution and suspicion, in connection with all the other evidence in the case. They were also told in the same instruction, that they are the judges of the credibility of the witnesses. This was placing too great a burden on the testimony of a seventeen year old boy where all of his relatives were taking sides in the trial. The jury was told to regard the evidence with suspicion. This placed too great a burden and should have been refused as it was for our court is getting away from such instruction.

Defendant objected to instruction for the state because it does not give the definition of larceny in technical terms; because it did not use the words "feloniously" or fraudulently, done—nor did it tell the jury that the intent to deprive the owner thereof must have been felonious or fraudulent. The instruction is not objectionable because it concludes with the words: "You should find the defendant guilty as charged in the indictment." This makes the indictment, which the jury had the right to take out with them, a part of the instruction.

In the case of *Edwards & Co.* v. *The City of Jackson,* 91 Miss. 429, 45 So. 14, this language was used: "Be it resolved by the Mayor and Board of Aldermen for the city of Jackson, proceeding under section 3011, of the Code of 1892, etc." The court said: "By this resolution of the board, section 3011 became as much a part of the ordinance as if the literal language had been incorporated into the resolution itself." So, when the jury is told to find him guilty as charged in the indictment, the indictment is made a part of the instruction.

It is only in instructions that attempt to define a crime that technical words should be used. *Sullivan* v. *The State,* 92 Miss. 828, 46 So. 248. The omission of words, however, in an instruction which attempts to define a crime, such words being statutory, would be error. *Rutherford* v. *The State,* 100 Miss. 832, 57 So. 224. So again, where the instruction does not attempt to define a crime, the omission of qualifying words is not error. *Dixon* v. *The State,* 106 Miss. 697, 64 So. 468; *McNeal* v. *The State,* 115 Miss. 678, 76 So. 625. It is not expected that every instruction should contain a definition.

It will be noticed that this instruction complained of, charges the intent; states that they were driven off the range, penned and killed; gives the value of the sheep and told the jury that they should find guilty as charged in the indictment, which charge was: "To unlawfully, wilfully and feloniously take, steal and carry away, etc.," a charge of the intent to deprive Lanius Ladnier, and

he was so deprived by the killing of the sheep after being driven off the range.

The instructions as a whole, properly stated the law. Vardaman Dedeaux did not make a highly intelligent witness but his testimony is unshaken on the material points. He was in a trying position. He was testifying against those who were close to him and no one would believe that he was deliberately making up his tale to injure his uncle, the accused.

He saw the sheep when they were brought in; witnesses testified to digging them up and they were identified by the owner from the marks on them. The owner did not give consent for their killing, did not know who to accuse until Vardaman Dedeaux told him. Then the sheep were found. With the testimony of Vardaman Dedeaux, Elmer Dedeaux is guilty, without it, the grandfather is in a very precarious condition.

The testimony objected to was, none of it, material. While it may not be entirely relevant, it is not in the sight of this case prejudicial. The fact that testimony was admitted which disclosed unprecedented growth in the flock of Elmer Dedeaux could not have been prejudicial to the decrease in Lanier Ladnier's flock or to the burying of the stolen sheep. There was no question as to the flock of sheep which Elmer Dedeaux had which were running at large but to those which he hid.

If the jury chose to believe Vardaman Dedeaux—and they did—the verdict is just and should be sustained.

W. H. COOK, J., delivered the opinion of the court.

Appellant, Elmer Dedeaux, together with his two brothers, was indicted for the larceny of five sheep, the property of L. W. Ladnier. There was a severance, and upon the trial of appellant he was convicted and sentenced to imprisonment in the penitentiary for two years, and from this conviction and sentence this appeal was prosecuted.

For a reversal of this cause appellant relies principally upon three grounds, and the facts necessary to an under-

standing of the questions presented for decision are substantially as follows: The codefendants, Ellis and Elvis Dedeaux, resided with their father Zeno Dedeaux, while appellant, who was married, resided about one-half mile therefrom. There was also living in the home of Zeno Dedeaux his grandson, Vardaman Dedeaux, a lad about seventeen years of age, and the conviction of appellant rests largely upon the testimony of this boy. Vardaman Dedeaux, who was also the nephew of L. W. Ladnier, the owner of the sheep alleged to have been stolen, left the home of his grandfather, Dedeaux, and went to reside with his grandmother Ladnier. Thereafter he furnished his uncle, L. W. Ladnier, certain information which caused Ladnier to secure a search warrant and go to the home of Zeno Dedeaux in search of certain sheep which he had lost. There he found a large number of sheep buried in two pits in the rear of Zeno Dedeaux's barn, and he was able to identify five of the sheep found in the smaller hole as being his property, and upon this discovery this indictment is predicated.

Vardaman Dedeaux testified that some time in June, 1920, appellant and the two codefendants left the home of Zeno Dedeaux late in the afternoon and went into the woods and came back after dark driving a number of sheep; that they called him from the house to assist them in getting the sheep into an inclosure; that he opened the gate and helped to pen them, knowing at the time that they were going to shear and kill the sheep; that he assisted in shearing one of them; that he watched them kill and bury the sheep; that he observed the marks of some of them and they were in the mark of L. W. Ladnier.

The first assignment of error which is pressed here is based upon the refusal of an instruction requested by defendant, the instruction being as follows:

"The court instructs the jury for the defendant that they are the sole judges of the credibility of the witnesses and the weight of the evidence, and that the testimony of

Vardaman Dedeaux in this case is what is known in law as the testimony of an accomplice, and that, in weighing his testimony, they should weigh it with great care, caution, and suspicion, and unless his testimony, weighed with great care, caution, and suspicion, in connection with all the other evidence in the case, convinces the jury beyond every reasonable doubt that the defendant stole the sheep, or participated in the stealing, as alleged in the indictment, then they shall find him not guilty."

It is contended on behalf of the state that the refusal of this instruction was proper for the reason that under the evidence the witness was not an accomplice. If there is a conflict in the testimony as to the acts, conduct, or participation of the witness in the crime alleged, it is then a question for the jury, under proper instructions, as to whether or not the witness was an accomplice, but, where there is no conflict in the testimony as to the acts and conduct of the witness, it is then a question of law for the court to say whether or not the acts, conduct, and participation of the witness in the alleged crime make him in fact an accomplice. There is no conflict in the testimony in this case as to the acts and conduct of the witness, and it clearly shows that he was present, aiding, assisting, abetting, and encouraging the commission of the crime, and we think, under the facts in this record, the witness was an accomplice.

While a conviction may be had on the uncorroborated testimony of an accomplice, the courts of this state are committed to the doctrine that it is proper for the court to instruct the jury that the testimony of an accomplice is to be weighed with caution (*White* v. *State,* 52 Miss. 216; *Fitzcox* v. *State,* 52 Miss. 923; *Green* v. *State,* 55 Miss. 454; *Cheatham* v. *State,* 67 Miss. 335, 7 So. 204, 19 Am. St. Rep. 310; *Wilson* v. *State,* 71 Miss. 880, 16 So. 304; *Osborne* v. *State,* 99 Miss. 410, 55 So. 52), and upon a new trial some cautionary instruction should be granted. We do not hold, however, that an instruction in the precise language of the one requested should be given, but, if

the jury is duly cautioned, the requirements of this rule are satisfied. In *Wilson* v. *State, supra,* this matter is fully discussed, and Chief Justice CAMPBELL there used language, which we quote to approve as announcing the correct view, the language there used being as follows:

"The court was not bound to pile up words suggestive of a desire for the jury to dismiss as unworthy of consideration the testimony of the accomplice. Having cautioned the jury as to the suspicious source of such testimony, it was proper to leave the jury to deal with it according to its effects on the minds of the jurors, who are not likely to accept too readily such testimony. The rule is for the presiding judge to inform the jury that the testimony of an accomplice is to be received and considered with caution, as from a polluted and suspicious source, but it must, in large measure, be left to the judge to choose the language in which this caution shall be given. There is no uniform rule. Cases vary with circumstances. In some cases stronger words of caution might be more appropriate than in others."

The next assignment relied upon brings up for review the action of the court in granting the state an instruction in the language following:

"The court instructs the jury for the state that, if they believe from the evidence beyond a reasonable doubt that the defendant Elmer Dedeaux, in company with others, in Stone county, Miss., on or about the 5th day of June, or on any date prior to the finding of the indictment in this case, drove off the range, penned, and killed five sheep belonging to L. W. Ladnier and described in the indictment, with the intent to deprive the owner thereof, and that said sheep were worth twenty-five dollars or more, you should find the defendant guilty as charged in the indictment."

Section 1251, Code of 1906 (Hemingway's Code, section 981), under which this indictment was drawn, is in part as follows:

"Every person who shall be convicted of taking and carrying away, feloniously, the personal property of an-

other of the value of twenty-five dollars or more, shall be guilty of grand larceny," etc.

The word "felonious" as used in this statute is not merely descriptive of the grade of the offense, but it is an essential ingredient of the crime of larceny, and, since this instruction omitted this essential element of the crime charged, it is erroneous.   It is well settled in this state that to constitute larceny the taking need not be *lucri causa,* but it is equally well settled that there must be a felonious or fraudulent taking of the property, and, unless the taking be felonious or fraudulent with the intent to deprive the owner of the property, it is insufficient to constitute the crime of larceny.   *Hamilton* v. *State,* 35 Miss. 214; *Watkins* v. *State,* 60 Miss. 323; *Warden* v. *State,* 60 Miss. 638; *Delk* v. *State,* 64 Miss. 77, 1 So. 9, 60 Am. Rep. 46; *Akroyd* v. *State,* 107 Miss. 51, 64 So. 936.

The third and fourth assignments are based upon the alleged improper admission of testimony.   The state was properly permitted to show that the five sheep described in the indictment were found buried in a pit near the barn of Zeno Dedeaux, but, over the repeated objections of defendant, witnesses for the state were permitted to testify about other sheep which were found buried in another and larger pit nearby.   Appellant was indicted for stealing five sheep of a particular mark, and the place where the carcasses of these sheep were found was clearly and definitely fixed by the evidence.   There was no evidence to connect appellant with the theft of any other sheep; in fact, upon his trial on this indictment such evidence would have been inadmissible, and it was highly prejudicial to appellant to permit evidence to go to the jury which indicated that there had likewise been many other sheep stolen.   It is true that, after the state had been permitted to fully develop the facts that a large number of sheep had been found in this other and larger pit, the court finally sustained a motion to exclude this evidence, and thereupon instructed the jury not to consider any of this testimony, and, if this ruling had been adhered to, it might

125 Miss—22.

have cured the error.   However, after the court had an-
nounced this ruling, counsel for the state persisted in pro-
pounding questions which elicited answers which violated
this ruling of the court, and some of these answers were
permitted to go to the jury over the objection of appel-
lant.

Again, over the repeated objections of appellant, the
state was permitted to show that, several months prior to
the time the sheep were found in this pit, L. W. Ladnier
owned a large number of sheep which ranged in the terri-
tory between the home of Zeno Dedeaux and Wolf river,
while at the time of the trial, which was in July, 1920, he
only owned two.   This testimony was clearly incompetent,
and the admission of this irrelevant and incompetent testi-
mony was necessarily prejudicial to the rights of appel-
lant.

For the errors herein indicated, this cause is reversed
and remanded.

*Reversed and remanded.*