Appellant, J.C. Pittman, was indicted for burglary with two others, Kenneth Harrison and Roger Caples. Harrison entered a plea of guilty and testified for the State against Pittman at Pittman's trial in the Circuit Court of Tunica County. Pittman was convicted and sentenced to six years imprisonment. He appeals, assigning three grounds for reversal.
It is appellant's position on appeal that he was denied due process of law as required by the United States Constitution because, it is alleged, the prosecution was allowed "to suppress evidence effecting the credibility of the State's key witness." Appellant's argument is predicated upon the case of Giglio v.United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).
The case against appellant Pittman was substantially as follows:
Pittman, Harrison and Caples drove in Pittman's truck to the storage sheds of one William Houston where certain "chemicals" were stored. Pittman and Caples got out of the truck and Harrison drove away, with the purpose of returning in twenty minutes to pick them up with a quantity of chemicals to be stolen from the warehouse. This arrangement was carried out and chemicals with a value of $700, stolen from the warehouse, were put in Pittman's truck. Later that night Harrison was apprehended by *Page 69 
the sheriff of Coahoma County driving Pittman's truck with the chemicals aboard. At the time, Pittman and Caples were not in the truck.
Upon Pittman's trial, the evidence established that the truck belonged to Pittman, and the sheriff testified that he had apprehended Harrison driving it on the night of the burglary with the stolen chemicals aboard. Pittman's activities in connection with the crime, other than the circumstance that his truck was used, appear from the testimony of his coindictee Harrison. At the time of Pittman's trial, Harrison had already entered a plea of guilty to the charge but had not been sentenced. Pittman did not testify and offered no evidence.
When Harrison, alleged accomplice of Pittman, was on the stand, the fact that he had entered a plea of guilty but had not been sentenced was disclosed. He was cross-examined at some length as to possible promises or inducements which might have been made or held out to him by the State as a reward for his testimony against Pittman. He steadfastly maintained that there had been "absolutely none" and said "no sir" at least twice when asked if any such inducements or promises had been offered or made and finally said "I tried not to plead guilty, but I got tired of lying and decided I would tell the truth."
Pittman's contention that the State suppressed impeaching evidence as to Harrison is based upon a motion made by Pittman's counsel to require disclosure of "information, any promises or statements made by any government official to Willie Dugan, Roger Caples and/or Kenneth Harrison" (Pittman's coindictees). All tangible evidence favorable to Pittman was duly turned over to defense counsel by the district attorney. Proceedings relevant to the present contention, as they appear in the record, were as follows:
 MR. GINGER: (defense counsel) Your Honor, the other motion that I filed is a motion to disclose information. What I'm basically asking for is a written statement by the State of what recommendations, promises, statements, and so forth have been made to the co-defendants in this case and the fourth person who is a co-defendant in Clarksdale.
 MR. GRAVES: (prosecuting attorney) Now, your Honor, we object to this. We don't think we are required to do it. They have cited a case which we have read and which we make available to the Court, we want to be very forthright about this.
 ARGUMENT (not reported)
 THE COURT: The Court won't accept any deals anyway. They are unacceptable to this Court. You heard me state that I wanted a pre-sentence report on him. No deals.
 MR. GINGER: Your Honor, we understand no deals have been made in this.
 THE COURT: The Court won't accept them.
 MR. GINGER: I'm not meaning to argue with either the Court or the State at all. I believe that under that case and several other cases the defendant Pittman, my client, is entitled to know what the State will recommend. I think the defendant is entitled to know.
 THE COURT: I don't accept State recommendations except in rare instances.
 MR. GINGER: I understand, your Honor, that's not —
 THE COURT: I don't think you are entitled to that. That's getting beyond the scope of the defendant's entitlement.
The present case is distinguishable from Giglio in several particulars which we consider controlling.
In Giglio, an accomplice, one Taliento, was the Government's key witness. Taliento had not been indicted. In Giglio, after the verdict, on the hearing of a motion for a new trial, it was established that Taliento had perjured himself in denying that he had been given any inducement to testify. The United States Supreme Court said: *Page 70 
 Here the Government's case depended almost entirely on Taliento's testimony; without it there could have been no indictment and no evidence to carry the case to the jury. Taliento's credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it.
 (405 U.S. at 154, 92 S.Ct. at 766, 31 L.Ed.2d at 109).
Moreover, in Giglio, Taliento was vigorously cross-examined by defense counsel in an effort to discredit his testimony by showing that inducements or agreements of prosecutorial leniency had been made. The witness testified that there had been none. This was false and after the verdict it was discovered that Taliento had been promised that he would not be prosecuted if he would testify against Giglio.
In the case now before this Court, there is nothing to show or to indicate that Harrison's testimony against Pittman was false or that he had been induced to give it by promises of leniency by prosecuting officials or by any representative of the State.
The suggestion that improper inducements were made to Harrison to obtain his testimony or that his testimony was false, in the absence of anything in the record to indicate either, amounts to no more than speculation or conjecture. No evidence was offered either before or during the trial to indicate that any such promises had been made to Harrison or that the testimony he had given against Pittman, which was uncontradicted, had been false in any particular.
In the case under consideration here, there was no motion for a new trial upon any ground. Therefore, no "newly discovered evidence" (or any other kind) was produced to show that Harrison had received promises of leniency in return for his testimony, or that his statement on the stand that he had not was false, or that his uncontradicted testimony against Harrison had been untrue in any particular.
The decision in Giglio is sound but it has no application in this case.
Appellant also argues that his conviction should be reversed in that, he says, he was wrongfully denied a "cautionary" instruction to which he was entitled, dealing with the testimony of Harrison, his alleged accomplice.
Ordinarily, an accused is entitled to an instruction telling the jury that it should view the testimony of an accomplice with caution and even suspicion, particularly where the case against the accused rests in large part upon the uncorroborated testimony of such an accomplice.
In Dedeaux v. State, 125 Miss. 326, 87 So. 664 (1921) this language appears:
 While a conviction may be had on the uncorroborated testimony of an accomplice, the courts of this state are committed to the doctrine that it is proper for the court to instruct the jury that the testimony of an accomplice is to be weighed with caution (White v. State, 52 Miss. 216; Fitzcox v. State, 52 Miss. 923; Green State, 55 Miss. 454; Cheatham v. State, 67 Miss. 335, 7 So. 204, 19 Am.St. Rep. 310; Wilson v. State, 71 Miss. 880, 16 So. 304; Osborne v. State, 99 Miss. 410, 55 So. 52), and upon a new trial some cautionary instruction should be granted. We do not hold, however, that an instruction in the precise language of the one requested should be given, but, if the jury is duly cautioned, the requirements of this rule are satisfied. In Wilson v. State, supra, this matter is fully discussed, and Chief Justice Campbell there used language, which we quote to approve as announcing the correct view, the language there used being as follows:
 "The Court was not bound to pile up words suggestive of a desire for the jury to dismiss as unworthy of consideration the testimony of the accomplice. Having *Page 71 
cautioned the jury as to the suspicious source of such testimony, it was proper to leave the jury to deal with it according to its effects on the minds of the jurors, who are not likely to accept too readily such testimony. The rule is for the presiding judge to inform the jury that the testimony of an accomplice is to be received and considered with caution, as from a polluted and suspicious source, but it must, in large measure, be left to the judge to choose the language in which this caution shall be given. There is no uniform rule. Cases vary with circumstances. In some cases stronger words of caution might be more appropriate than in others."
 (125 Miss. at 335, 87 So. at 665).
There were in the present case circumstances tending to corroborate Harrison in that (1) Harrison did in fact have Pittman's truck on the night of the burglary and (2) the stolen goods were found in it. Moreover, the testimony of Harrison, the accomplice, is uncontradicted and his possession of the truck under the circumstances of the case remains unexplained by Pittman. The trial court declined to give the instruction requested by Pittman upon objection by the State that it had not been submitted 24 hours in advance as required by Rule 14 of the Uniform Rules of the Circuit Courts of Mississippi. Pittman's counsel explained to the court that he had not known "for certain" in advance of trial that Harrison, the accomplice, would testify and therefore an instruction had not been prepared and submitted earlier.
Notwithstanding the lateness of filing and the dubiety of the excuse offered, we have examined and considered the instruction in question. We find that this very lengthy instruction proffered by the defense suffers from two fatal defects. First, it is highly argumentative. Its language is more appropriate to counsel's argument to a jury than to an instruction emanating from a trial judge. Furthermore, it would allow the jury to assume, in passing upon the testimony of the accomplice, facts not supported by any evidence. As stated by Chief Justice Campbell in Wilson, supra, "The Court was not bound to pile up words suggestive of a desire for the jury to dismiss, as unworthy of consideration, the testimony of an accomplice." The proffered instruction should not have been given in any case and the trial court's refusal to give it was not error.
Finally, it is argued that the conviction should be reversed because the State requested and the trial court granted an instruction defining the term "reasonable doubt" in which the jurors were told that beyond a reasonable doubt did not mean beyond all possible doubt but meant a doubt based on reason and common sense.
This instruction should not have been given. This Court has held in a number of cases that the term "reasonable doubt" is self-defining and that the word "reasonable" sufficiently modifies and restricts the word "doubt". We find, however, in considering the effect of the instruction in this case, that the defense requested and was granted instructions on the subject of reasonable doubt which suffer from a similar fault. In fact, defense instruction Number 3, which it is unnecessary to quote at length, goes further than the instruction complained of which was granted at the request of the State. The Court instructed the jury at the instance of the appellant that before it could convict appellant the evidence must have established appellant's guilt beyond a reasonable doubt and to a moral certainty. Instruction Number 3 went on to say to the jury that "a reasonable doubt is a fair doubt, based upon reason and common sense." And further, "It is such a doubt as you would be willing to rely and act upon in the most important of your own affairs." We repeat, an instruction attempting to define the words "reasonable doubt" should not be given, either for the prosecution or defense. It appears here that both sides obtained instructions on the subject which, in some degree at least, exceeded what they were *Page 72 
entitled to and were more generous than correct. Under these circumstances we are unable to say that the giving of the instruction complained of was so prejudicial that the conviction must be reversed on account of it. We have concluded that all of the instructions read together contained a reasonably accurate statement of the law of the case.
The evidence having been more than ample to support the jury's verdict and no reversible error having been demonstrated, the conviction and sentence will, therefore, be affirmed.
AFFIRMED.
PATTERSON, C.J., INZER, P.J., and ROBERTSON, SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur. *Page 299