SMITH, Presiding Justice,
for the Court:
James E. Nealy, Wiley Ewing, Jr., and T. L. Cunningham were indicted for capital murder. Nealy was tried separately, and, following his conviction, was sentenced to life imprisonment. He appeals.
The facts and circumstances reflected by the record and relied upon by the State may be summarized as follows:
At about 9:00 on the evening of January 13, 1976, three men robbed the store of Leo Davis. In the course of the robbery they killed Davis. According to testimony of witnesses for the State, these men were Nealy, Ewing and Cunningham. Cunningham entered the store first and engaged the attention of Davis by pretending to wish to make a purchase. As Davis turned away, Nealy and Ewing came in. Nealy was armed with a sawed-off shotgun and Ewing carried a knife. Nealy hit Davis across the face with the gun, knocking him to the floor, and Ewing began stabbing him with the knife. Davis managed to say “Go ahead, get what you want to get.” Thereupon Nealy hit Davis across the top of his head with the gun and Ewing cut Davis’ throat with the knife.
Ewing extracted two $100 bills from Davis’ wallet and Cunningham cleaned out the cash register. They then left the store and returned to Nealy’s automobile. They drove to a poolroom and before going in, Nealy put the two $100 bills in the right front hubcap and hid the shotgun. They went in and played a game of pool, staying there about twenty or thirty minutes. When they left, they again got in Nealy’s automobile and Nealy drove Cunningham home, then drove himself home where he got out and turned his automobile over to Ewing in order that Ewing might drive home.
Next day, in the course of their investigation of the robbery, the Clay County Sheriff and two of his deputies, accompanied by a member of the Mississippi Highway Patrol, went to Ewing’s home. Nealy was there. One of the deputies found the bloody clothes and boots Ewing had worn the night before. Ewing asked one of the officers if he would drive him down the road in his car. The officer consented, and Ewing and the officer left together and were gone for a short while. Upon their return, the officer asked Nealy if he might search the Nealy automobile. The officer testified, “I asked him, I said I’ve got some information there is money in the hubcaps of this car, do you mind me looking? He (Nealy) said, ‘No, help yourself.’ ” Whereupon the officers discovered two $100 bills in the right front hubcap of Nealy’s automobile. Ewing was arrested but, at that time, he had not implicated Nealy, and Nealy was not arrested until several days later.
Nealy assigns as error, requiring reversal, two alleged errors:
(1) The court erred in permitting the introduction of two one-hundred dollar bills, obtained as a result of an unlawful search and seizure.
(2) The court erred in refusing to force the State to disclose any deal or promise *790 it made with the co-defendant who testified for the State.
The trial court conducted a preliminary hearing upon Nealy’s pretrial motion to suppress evidence relating to (1) the two $100 bills found in the hubcap of Nealy’s automobile and (2) two shotgun shells found on premises occupied by Nealy. At the conclusion of the hearing, the trial court sustained the motion to suppress as to the shotgun shells and overruled it as to the two $100 bills.
All of the officers present at the time and place of the search of Nealy’s automobile testified on the hearing of Nealy’s motion to suppress. All four testified that there were no threats or force employed to obtain Nealy’s consent to the search. They testified that, at the time of the search, appellant was not under arrest, (one testifying that Nealy was not then a suspect) and that he had voluntarily consented to the search of the hubcaps of his automobile.
Nealy testified in his own behalf at the hearing and denied that he had given Officer Middleton permission to search his car, saving that Middleton had not asked for permission. He also denied that Officer McNeel asked for permission to search. However, he admitted that Officer Holl-ingsworth had asked for and had been given permission to look inside the car. Nealy testified further that the officers did not force or threaten him in any way and that he had not experienced any feeling of pressure or of influence exerted upon him on account of the presence of the officers. He testified that he had not been arrested or charged with the crime at the time of the search. He also said that he was twenty-four years of age and had ten and one-half years of school.
At the time of the search, Ewing was the object of the investigation. Nealy was not arrested or a suspect. Under the totality of the circumstances the trial court’s conclusion that Nealy had consented and that his consent had been freely and voluntarily given meets the requirements prescribed by the United States Supreme Court. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), Cutchens v. State, 310 So.2d 273 (Miss.1975).
Nealy’s second contention is that the trial court erred “in refusing to force the State to disclose any deal or promise it made with the co-defendant (Ewing) who testified for the State.” To support this contention Nealy appears to rely upon Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).
In a pretrial motion styled “motion to Disclose Information” Nealy requested disclosure of the following:
What promises have been made by the District Attorney, his assistants or agents, or any other governmental official or their agents in exchange for the testimony of Wiley Ewing, at trial of this case?
The district attorney responded in writing, answering “none” to the above question as what promises had been made to Ewing for his testimony.
On cross-examination Ewing was interrogated by counsel about the matter:
Q. Have you been told, Wiley, that they would be lighter on you if you testified against Nealy?
A. No.
Q. Has your father or the man your father works for talked to you?
A. No.
Q. He hasn’t sent word to you you’d better tell the truth so they will go light on you?
A. No.
Q. Officer McNeel hasn’t told you to testify against this young man?
A. No.
Ewing was cross-examined at considerable length about an earlier confession in which he had not implicated Nealy. None of this, however, revealed any promise or improper inducement made or employed to obtain Ewing’s testimony.
There is no evidence in the record to support the contention that Ewing’s testimony implicating Nealy was the result of *791 any promise of leniency by any representative of the State or by anyone else. Neither in Nealy’s motion for a new trial nor in the brief filed in his behalf on this appeal has it been suggested that there was or is newly discovered evidence capable of supporting the proposition that Ewing had testified falsely in stating that no promises of leniency or other inducements had been made to him.
In Pittman v. State, 350 So.2d 67 (Miss.1977), this Court had occasion to consider Giglio, supra. What was said in Pittman applies with equal force to the situation here. In Pittman this Court said:
The present case is distinguishable from Giglio in several particulars which we consider controlling.
In Giglio, an accomplice, one Taliento, was the Government’s key witness. Tal-iento had not been indicted. In Giglio, after the verdict, on the hearing of a motion for a new trial, it was established that Taliento had perjured himself in denying that he had been given any inducement to testify. The United States Supreme Court said:
Here the Government’s case depended almost entirely on Taliento’s testimony; without it there could have been no indictment and no evidence to carry the case to the jury. Taliento’s credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it. (405 U.S. at 154, 92 S.Ct. at 766, 31 L.Ed.2d at 109).
Moreover, in Giglio, Taliento was vigorously cross-examined by defense counsel in an effort to discredit his testimony by showing that inducements or agreements of prosecutorial leniency had been made. The witness testified that there had been none. This was false and after the verdict it was discovered that Taliento had been promised that he would not be prosecuted if he would testify against Giglio.
In the case now before this Court, there is nothing to show or to indicate that Harrison’s testimony against Pittman was false or that he had been induced to give it by promises of leniency by prosecuting officials or by any representative of the State.
The suggestion that improper inducements were made to Harrison to obtain his testimony or that his testimony was false, in the absence of anything in the record to indicate either, amounts to no more than speculation or conjecture. No evidence was offered either before or during the trial to indicate that any such promises had been made to Harrison or that the testimony he had given against Pittman, which was uncontradicted, had been false in any particular.
In the case under consideration here, there was no motion for a new trial upon any ground. Therefore, no “newly discovered evidence” (or any other kind) was produced to show that Harrison had received promises of leniency in return for his testimony, or that his statement on the stand that he had not was false, or that his uneontradicted testimony against Harrison had been untrue in any particular.
The decision in Giglio is sound but it has no application in this case.
(350 So.2d at 69-70).
The conviction is supported by the detailed testimony of Ewing, Nealy’s co-in-dictee. Ewing is corroborated by the finding of the two $100 bills in the hubcap of Nealy’s automobile, and by the testimony of two of Nealy’s jailmates who testified that while confined with them, Nealy had told them that he had participated in the robbery and had asked their advice as to what he should do. Nealy testified that he was with Ewing and Cunningham on the night in question but said that he had not been with them when they had robbed and killed Davis. The evidence made a question of fact for the jury, it was. ample to support the verdict of guilty and its sufficiency is not challenged.
After a careful review of the record in this case we have concluded that there is no merit in either of the propositions assigned *792 by Nealy for reversal of his conviction. Therefore, the judgment and sentence appealed from are affirmed.
AFFIRMED.
PATTERSON, C. J., INZER, P. J., and ROBERTSON, SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.