472 So.2d 428 (1985)
Stanley L. DAVIS
v.
STATE of Mississippi.
No. 54795.
Supreme Court of Mississippi.
June 12, 1985.
Rehearing Denied July 17, 1985.
*429 Duncan Lott, Langston, Lott & Langston, Booneville, for appellant.
Bill Allain, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
En Banc.
PRATHER, Justice, for the Court:
This is an appeal from a criminal conviction in the Circuit Court of Lee County, Neal Biggers presiding. Stanley L. Davis was convicted of manslaughter and sentenced *430 to 18 years in the custody of the Mississippi Department of Corrections.
Davis appeals, assigning as error that the trial court erred in:
(1) Failing to sustain in its entirety the defendant's motion in limine concerning a phone call received by the wife of the victim from the wife of the defendant prior to the shooting.
(2) Allowing Officer Nicky Hall to testify concerning the failure of the defendant to give a statement after his arrest.
(3) Allowing the introduction of evidence and testimony by the state which was not provided to the defense in discovery.
(4) Permitting the testimony of Kim Barker who was present in the courtroom during previous testimony.
(5) Overruling the defendant's motion for directed verdict and peremptory instruction.
(6) Refusing the defendant's request to submit an instruction concerning the credibility of alleged accomplice Ray Alexander.

I.
On October 27, 1981, at approximately 10:30 p.m. appellant Stanley L. Davis went to Seay's Lounge located south of Baldwyn, Mississippi on Hwy. 45. Davis was accompanied by his stepson, Ray Alexander. Present at the lounge were the owner Wayne Watson and his wife Sue Watson, and customers Jimmy McMillan, Fay Lindley, Bobby Skaggs, Tim Hester and his brother.
Davis and Alexander played some pool with the Hesters. There was a disturbance between Davis and the Hester brothers, and the Hester brothers left the lounge. Sometime later, Davis played pool with Jimmy McMillan. Without provocation, Davis broke a pool cue over McMillan's back, then began hitting and kicking McMillan. Wayne Watson, the owner of the bar, broke up the fight by spraying mace in Davis' face. After Davis threw a cue ball at Watson, Watson pulled out a pistol and pointed it at Davis. Davis and Alexander then left the lounge in Davis' red Ford pickup.
Approximately one hour later, Sue Watson received a phone call at Seay's Lounge from Genelle Davis, wife of appellant. Following the phone conversation, Ms. Watson went to the front window of the lounge and observed appellant Davis in his red Ford pickup truck driving in front of the lounge and firing a pistol.
Five shots were fired through the front window of Seay's Lounge. One bullet struck Wayne Watson in the chest, piercing his lung and striking the aorta. Watson died shortly thereafter from massive hemorrhaging.
At trial, appellant denied any involvement in the shooting. Appellant Davis testified that, after leaving the lounge following his fight with McMillan, he and his stepson, Ray Alexander, went to the home of Davis' estranged wife. Inside the home, Davis located a 410 shotgun belonging to his stepson. However, Davis could not locate any shells so he left home without the weapon. Davis further testified that he and Alexander then went to his apartment. Benny King, a friend of appellant, was at the apartment. According to Davis, sometime between 11:00 and 12:00 p.m., Ray Alexander borrowed appellant's pickup truck in order to take King home. When Alexander returned, appellant got in his pickup and proceeded to drive towards his wife's house. Along the way, appellant was pulled over by the police and placed under arrest.
On the contrary, Ray Alexander, appellant's stepson, testified that when he and Davis left the home of appellant's wife, they proceeded to appellant's apartment where appellant got his own pistol. According to Alexander, they returned to Seay's Lounge, and appellant Davis, who was driving, fired the pistol into the lounge. Alexander admitted that in his two earlier statements to authorities he denied being present at the shooting.
No weapon was found on the appellant or in the appellant's truck. A 30-30 rifle was recovered from the apartment of Ray *431 Alexander. Officers McMiller and Nicky Hall of the Lee County Sheriff's Department both testified that this rifle had dust in its barrel and could not have been recently fired. A crime lab ballistics test failed to positively identify the type of weapon used in the shooting.

II.

I. Did the trial court err in failing to sustain in its entirety appellant's motion in limine concerning a phone call from appellant's wife to the wife of the victim immediately prior to the shooting?
At the outset of the trial, the defense sought by motion in limine to exclude any testimony concerning a telephone conversation between appellant's estranged wife, Genelle Davis, and Sue Watson, the wife of the victim. The basis of the motion was the statutory incompetency of a spouse as a witness set forth in Miss Code Ann. § 13-1-5. The trial court ruled that the state could bring out the fact of the telephone conversation but would not be allowed to go into the substance of the conversation.
Sue Watson's testimony at trial included the following:
Q. The phone rang and someone called, right?
A. True.
Q. Who was on the telephone?
A. Belle.
Q. And who is Belle?
A. Belle Davis.
Q. Is that Stanley Davis' wife?
A. Yes, sir.
Q. Okay, did you know her personally?
A. Yes, sir.
Q. And have you talked with her on the phone before?
A. Yes, sir.
Q. Okay, while you were on the phone with her, what happened?
A. If I can't tell you what she had warned me of,
BY MR. JOHN FARESE: Your Honor, we are going to object and move for a mistrial.
BY JUDGE BIGGERS: Counselor, this witness evidently doesn't understand what she is allowed to testify to and what she cannot, do you need some time to instruct her some, we are getting into a very dangerous area.
BY MR. YOUNG: All right, let me talk to her for just a minute. I don't think she understands.
A. Yes, I think I do, continue on if you want to.
Q. You cannot tell, 
A. I can tell what I saw, is that true?
Q. You can tell what you saw, you can't tell what Belle told you over the telephone, you can tell anything you saw but anything outside if Stanley Davis wasn't present, it is hearsay so you can tell what happened while you were on the telephone, what you saw, who you saw, who was present and what happened.
A. I saw a red pickup, I saw like fire coming out of the end of a gun and the shots went right by me and one of them hit my husband and Stanley Davis was driving that red Ford Pickup.
Appellant contends that the admission of this testimony amounts to a violation of Miss. Code Ann. § 13-1-5, which provides as follows:
Husbands and wives may be introduced by each other as witnesses in all cases, civil or criminal, and shall be competent witnesses in their own behalf, as against each other, in all controversies between them. Either spouse is a competent witness and may be compelled to testify against the other in any criminal prosecution of either husband or wife for a criminal act against any child, for contributing to the neglect or delinquency of a child, or desertion or nonsupport of children under the age of sixteen (16) years, or abandonment of children. But in all other instances where either of them is a party litigant the other shall not be competent as a witness and shall not be required to answer interrogatories or to make discovery of any matters involved in any such other instances without *432 the consent of both. (Emphasis added).
With the exception of the class of cases enumerated in the statute, the prosecution is prohibited from calling a defendant's wife to testify against her husband without the consent of both spouses. Wallis v. State, 254 Miss. 944, 183 So.2d 525 (1966); Outlaw v. State, 208 Miss. 13, 43 So.2d 661 (1949). In Bayse v. State, 420 So.2d 1050 (Miss. 1982), this Court noted that the statutory prohibition extends to the introduction of out-of-court statements made by the spouse. 420 So.2d at 1054.
Ford v. State, 218 So.2d 731 (Miss. 1969) prohibits only testimony by a third party as to the substance of the party's conversation with a defendant's spouse and not testimony as to the fact that a conversation with the spouse took place. Mrs. Watson exceeded the trial court's ruling on appellant's motion in limine by her reference to "what she [appellant's wife] had warned me of ..." but did not delve into the substance of the telephone conversation.
In this Court's opinion, the admission of the testimony of Sue Watson regarding the phone call from appellant's wife was not prejudicial error requiring reversal under this Court's decision in Ford v. State, supra.

III.

Did the trial court err in allowing Officer Nicky Hall to testify concerning the failure of the appellant to give a statement to the authorities following his arrest.
During the state's redirect examination of Lee County Investigator Nicky Hall, the following colloquy took place:
Q. You were asked on cross examination if he indicated any knowledge of the shooting, did you ask him about the shooting at any time?
A. No, sir, not that night I didn't.
Q. The next day?
A. When I processed him, I gave him ample opportunity to give any type statement that he would like, 
BY MR. JOHN BOOTH FARESE: Your Honor, we object to that.
BY MR. JOHN FARESE: Your Honor, we object to that, he is not required to give any statement.
BY JUDGE BIGGERS: Objection sustained.
BY MR. YOUNG: Your Honor, the reason I asked him this question is that Mr. John Booth Farese brought this out on cross examination.
BY MR. JOHN FARESE: Your Honor, I am going to object to any argument in the presence of the jury, the law is plain on that and we move for a mistrial in addition to our objection.
BY JUDGE BIGGERS: I think it was adequately covered on cross examination, the witness answered the question about whether or not any statement was made, the objection will be sustained.
BY MR. JOHN FARESE: Your Honor, will you rule on my motion for a mistrial?
BY JUDGE BIGGERS: A motion for a mistrial will be overruled.
Appellant contends that the comment by Officer Hall constitutes an impeachment of the appellant for exercising constitutional right to remain silent. Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).
The state argues that the error, if any, was invited by the line of inquiry pursued by the defense counsel during the preceding cross-examination of Officer Hall:
Q. Did you question him about the incident later?
A. Yes, sir, when I processed him, I did.
Q. Did he indicate that he had any knowledge of the shooting?
A. He wouldn't say anything.
Q. He didn't say anything?
A. No, sir.
Q. He gave you this permission to search, didn't he?
A. Right.
It is well settled that an attorney may not complain on appeal of an error which he invited at trial. Johnson v. State, *433 416 So.2d 679 (Miss. 1982); Reddix v. State, 381 So.2d 999 (Miss. 1980); Simpson v. State, 366 So.2d 1085 (Miss. 1979). Of equal importance, the trial court sustained appellant's objection to the comment by the witness. Appellant did not request the court to instruct the jury to disregard the question and answer. As a general rule, it is presumed that when the trial judge sustains objections the jury understands that the trial court disapproves of the testimony or inquiry in question. Holifield v. State, 275 So.2d 851 (Miss. 1973).
This assignment of error is without merit.

IV.

Did the trial court err in allowing the introduction of evidence in testimony which was not furnished to the defense during discovery.
Appellant argues that the failure of the state to produce (a) previous statements of the witness Ray Alexander which were contradictory to his testimony at trial and (b) a pool cue stick taken from the scene of the crime. Appellant argues that the trial court erred in refusing to suppress the testimony of Alexander and the pool stick as a result of these discovery violations.
Rule 4.06 of the Uniform Crim.Rules  Cir.Court provides as follows:
Rule 4.06
DISCOVERY
The prosecution shall disclose to each defendant or to his attorney, and permit him to inspect, copy, test, and photograph upon request and without further order the following:
(1) Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial;
(2) Copy of any recorded statement of the defendants to any law enforcement officer;
(3) Copy of the criminal record of the defendant, if proposed to be used to impeach;
(4) Copy of crime lab reports or report or any tests made;
(5) Exhibit any physical evidence and photos to be offered in evidence; and
(6) Copy of any exculpatory material concerning defendant.
Upon a showing of materiality to the preparation of the defense, the court may require such other discovery to defense counsel as justice may require.
In response to cross-examination by the defense, Ray Alexander admitted giving two written statements to authorities prior to trial. At that point, defense counsel requested to see the statements. The state furnished Alexander's prior statements to the court, the court conducted an incamera inspection of the statements and concluded as follows:
The procedure followed by the trial judge is identical to that provided in Rule 4.06 as follows:
BY JUDGE BIGGERS: Well, the Court has read both statements and the statements substantially, as far as relevant matters are concerned, are consistent with what the witness has testified to in his testimony. In the first statement he states that he went home after the fight and didn't see the Defendant the rest of the night and the second statement states substantially what he testified to, that they did go back to the lounge after getting the gun and observed the Defendant shooting into the lounge. So the rule under the Mississippi procedure in case of contradictory testimony the State having to give the statements for examination, the Court does not feel that they are contradictory. However, the further question arises that when the witness for the prosecution has made contradictory statements, therefore, bringing his credibility into question, is that exculpatory evidence that the Defendant is entitled to know about, I don't know of any ruling that has ever defined that. However, in this case since it is an eye-witness, an alleged eye-witness and since he has made conflicting statements as he has admitted on the stand but since he has made prior conflicting statements of what he knew about this case, I think *434 that safety would be the best policy and the Court is not going to say that it is not exculpatory because it brings into question the credibility of the key witness that the State has put on the stand. So, therefore, I am going to turn over the statements to the Defendant and let them examine them and have an opportunity to recross this witness after examining the statements but they are not in all that detail and I don't think that you will need very long to examine them. We will be in recess for ten minutes.
BY MR. JOHN FARESE: Thank you, your Honor.
(After the recess with the jury in the jury box, the following proceedings were had.)
BY JUDGE BIGGERS: The Defendant may resume your cross examination.
The procedure followed by the trial judge is identical to that provided in Rule 4.06 as follows:
Upon request of the defendant, the prosecution shall furnish to the court in camera any prior written statements of witnesses. If these materials are found to be materially inconsistent with the witness's testimony, the statements shall be supplied to defense counsel prior to cross-examination.
Upon a showing of cause, the court may at any time order that specified disclosures be restricted or deferred, or make such other order as is appropriate, provided that all material and information to which a party is entitled must be disclosed in time to permit his counsel to make beneficial use thereof.
That procedure was both correct and commendable in light of Barnes v. State, 460 So.2d 126, 133-135 (Miss. 1984) and Patrick v. State, 285 So.2d 165, 167 (Miss. 1973).
In this Court's opinion, the trial court corrected the state's failure to provide the defense with copies of Alexander's prior written statements in accordance with the provisions of Rule 4.06. Compare Barnes v. State, 471 So.2d 1218 (Miss. 1985).
As to appellant's contention that a second pool cue stick should not have been allowed into evidence because it had not been exhibited to the defense, it is sufficient to note that this pool cue stick was never in fact offered into evidence.
This assignment of error is meritless.

V.

Did the trial court err in allowing Kim Baker to testify after she was present during previous court testimony?
The state called Kim Baker, appellant's 15 year old stepdaughter, as a rebuttal witness. Defense counsel objected on the basis that Baker had been present in the courtroom during previous testimony. A hearing was held outside of the presence of the jury; Baker admitted that she was present in the courtroom during the testimony of Officer Nicky Hall, lounge customer Fay Lindley, lounge customer Bobby Scaggs and Dr. Billy Walker, pathologist.
Following the hearing, the trial court ruled that Baker could testify in rebuttal but that her testimony would be limited to matters which were unrelated to the testimony presented while Baker was present in the courtroom and specifically would be limited to statements made by the appellant in the presence of Baker.
Baker testified that on the night of the shooting, she was present at her mother's home; that around 11:00 or 11:30 p.m. she was awakened by the appellant who entered the house cursing; that appellant stated as he left the home, "I'll teach Wayne Watson to throw mace in my face."
The question of whether a witness may testify when he has remained in the courtroom after the rule has been invoked is within the discretion of the trial judge. Miss.Un.Crim.Rules Ct.Prac. 5.09. Irving v. State, 361 So.2d 1360 (Miss. 1978), cert. denied, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979).
The trial court did not abuse its discretion in permitting limited testimony by this witness.

*435 VI.

Did the trial court err in overruling appellant's motion for a peremptory instruction or directed verdict or in the alternative that the verdict of the jury was against the overwhelming weight of the evidence?
At the close of the state's case, the defense moved for a directed verdict as to the charge of murder against the appellant. The trial court denied appellant's motion and appellant assigns this ruling as error.
It is well settled that one indicted for murder but convicted of manslaughter may not complain about the giving of a murder instruction, even where the murder instruction is erroneous. Carter v. State, 402 So.2d 817 (Miss. 1981); Ray v. State, 381 So.2d 1032 (Miss. 1980); King v. State, 315 So.2d 925 (Miss. 1975). Accordingly, it was not error for the trial court to grant the murder instruction.

VII.

Did the trial court err in refusing appellant's requested cautionary instruction concerning the testimony of Ray Alexander as an alleged accomplice?
Ray Alexander, appellant's 21 year old stepson and witness on behalf of the state, was indicted and charged along with the appellant for the murder of Bobby Wayne Watson. Appellant argues that the trial court accordingly erred in refusing appellant's requested instruction D-10 as follows:
Ray Alexander is an alleged accomplice in this case and the testimony of an accomplice is to be considered and weighed with great care and caution. You may give it such weight and credit as you deem it is entitled.
The granting or refusing of a cautionary instruction regarding the testimony of an accomplice lies within the sound discretion of the trial judge. Jones v. State, 381 So.2d 983 (Miss. 1980), cert. denied, 449 U.S. 1003, 101 S.Ct. 543, 66 L.Ed.2d 300 (1981); Fleming v. State, 319 So.2d 223 (Miss. 1975); Ragan v. State, 318 So.2d 879 (Miss. 1975). In ruling on the requested instruction, the trial judge in the case sub judice acknowledged that a close question was presented and set forth the reasons for his ruling.
BY JUDGE BIGGERS: In view of the situation that it is very close question as to whether or not Ray Alexander should be considered as an accomplice in this particular factual situation, the Court is of the opinion that he is in fact not an accomplice, a step-son going with his step-father on a mission is not in the Court's opinion enough to classify him as an accomplice and also it is a comment on the evidence of the witness that otherwise, if he is not an accomplice, and for those reasons D-10 will be refused. Counsel will, of course, be allowed to argue to the jury what interest, if any, Ray Alexander has in the case but the Court is not going to bring it up and comment on it.
This Court finds that the circuit judge's ruling on this instruction was not an abuse of discretion under the facts of this case.
Finding no reversible error, the Court affirms the conviction of the defendant.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P. JJ., ROBERTSON and ANDERSON, JJ., concur.
HAWKINS, DAN M. LEE and SULLIVAN, JJ., dissent.
HAWKINS, Justice, dissenting:
I respectfully dissent in the Court's holding that the refusal to give the cautionary instruction D-10 as to the witness Ray Alexander's testimony was not error.
In Dedeaux v. State, 125 Miss. 326, 335, 87 So. 664 (1921), we held that unless the facts show without contradiction the state's witness was not an accomplice, then the accused is entitled to such instruction. In subsequent cases we have blurred the distinction by simple generalizations that the granting or refusing of such instruction is discretionary with the circuit judge. See: cases cited in majority opinion, under VII. The circuit judge in this case did a better *436 job of recognizing the distinction than does the majority, which leaves the giving or granting of such instruction "within the sound discretion" of the trial court.
In my view, the fact that the state's witness also has been indicted, and there has been no nolle prosequi or dismissal of the charge as to him, makes him an accomplice as a matter of law. If the state wants to object to such a defense instruction, it should prior to trial move to dismiss all charges against the co-defendant. Otherwise, he is clearly an accomplice and has something to gain by testifying for the state.
I think we should also make it clear that it is only in rare and exceptional cases that such an instruction should be refused. Those exceptional circumstances should be when the facts clearly demonstrate without contradiction that the state's witness was not in fact an accomplice, and there is no criminal charge pending against him arising out of the same offense.
DAN M. LEE and SULLIVAN, JJ., join this opinion.