576 So.2d 1239 (1991)
J.W. BURKE a/k/a J.W. Henning
v.
STATE of Mississippi.
No. 89-KA-0914.
Supreme Court of Mississippi.
February 20, 1991.
Mager A. Varnado, Jr., Gulfport, for appellant.
Mike C. Moore, Atty. Gen. and Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and ROBERTSON and BANKS, JJ.
BANKS, Justice, for the Court:
The Harrison County Grand Jury indicted J.W. Burke, a/k/a J.W. Henning for the burglary of a dwelling on March 11, 1985. He was found guilty by a jury, and the court sentenced him to ten years in the custody of the Mississippi Department of Corrections. We reverse and remand for a new trial.

FACTS
McKeithen Jones resided in apartment 103 of the Fountain Square apartment complex in Gulfport, where a burglary occurred on October 1, 1984. Jones, a petty officer in the United States Navy, left for work at approximately 6:30 a.m. on October 1 and returned about 12:30 p.m. Upon his return, Jones found his door locked as he had left it, but once inside he discovered that the front window curtains which had been closed when he left were open, flower *1240 vases which had been in the front window were on the floor, and his stereo and video cassette recorder (VCR) were missing.
Sandra Wise, a resident in apartment 601, lived across from Jones and observed someone at approximately 9:30 a.m. in Jones's apartment, which was about sixty to seventy feet away. Wise was unalarmed because she thought the person might be either Jones's brother, who had been visiting, or some friends. Also, she noticed that the curtains were drawn at 6:30 when Jones and her husband had left for work, but that at approximately 9:30, they appeared to be drawn together. She told Jones and the investigating officers that she did not know the person that she saw in the apartment but that she would recognize him if she saw him again. At trial Wise stated that she could not see things far away and has worn glasses since the age of five to correct this problem. She added that she wears glasses all the time and was wearing glasses at the time she saw someone in Jones's apartment on October 1.
Two days after the burglary Jones directed her attention to two men working on a car in the complex parking lot and asked whether either was the man she saw in the apartment. Wise identified one of the two men, Burke, as the man she saw in the apartment. The police were called and Burke was arrested. As Burke was being arrested Mary Stallworth and Bobby Ball left the apartment complex in a hurried manner.
Mary Stallworth worked as a maid at Fountain Square Apartments cleaning vacant apartments. She also lived there, in apartment 104. At trial she testified that on October 1 she was cleaning apartment 204, located directly above her own, when she heard Burke, who lived in apartment 102, knock on her door. Burke asked her if her boyfriend, Bobby Ball, was home. Stallworth responded negatively. Burke then asked Stallworth to serve as his lookout. She testified that she did not know for what particular purpose he wanted a lookout but declined for fear of getting into trouble.
Within the same time frame as when Burke was identified and arrested, Jones was told that his property had been seen at Ball's mother's house. He informed the police and, after the property was in fact discovered there, Detective Pat Pope arrested both Mary Stallworth and her boyfriend Bobby Ball on October 18, for receiving stolen property. Originally, Ms. Stallworth stated that she could not identify the person from whom she bought the equipment, but after three hours of questioning, she named Burke. She stated and later testified that she purchased the stolen equipment from Burke for $175, knowing it was stolen but not knowing from where it had been stolen.
Upon seeing Detective Pope arrive at the Harrison County Jail with Ball, Burke told Detective Pope that he knew the detective would get the right man, referring to Ball. Burke added that he did not commit the burglary.
Finally, Burke testified in his own defense at trial and also participated in the defense's final argument to the jury. He stated that on the morning of the burglary he awoke about 9:15 a.m., dressed and immediately went to the home of his friend Paul Pearson. He went to discuss with Pearson, who lived around the corner from Fountain Square Apartments, the possibility of Pearson's co-signing a note with Burke. According to Burke, he remained at Pearson's until the television program "Family Feud" was over at approximately 11:30 a.m. Burke then returned home where he went to sleep on his couch until he was awakened by Jones about 12:30 p.m.
In contradiction to his trial testimony, Burke had told the arresting officer, Detective DeSalvo, on October 6 that he could not have committed the burglary because he had been asleep. Burke never told the officer that he had been at a friend's all morning. He offered as an explanation for this inconsistency that at the time of the arrest he was angry and was not thinking.

ISSUES
Burke raises three issues in this appeal. Only two merit discussion.

*1241 1.

DID THE TRIAL COURT ERR IN OVERRULING MR. BURKE'S MOTION FOR A MISTRIAL AFTER THE STATE COMMENTED UPON HIS FAILURE TO CALL A WITNESS?
Burke assigns as error the fact that the prosecutor allegedly improperly commented on his failure to call a witness, who Burke claims was equally accessible to the State. During the State's closing argument, the following occurred:
BY MS. ALFONSO: What just screams at me from what the Defendant said in his testimony is that if he was at a friend's, where's the friend?
BY MR. VARNADO: Object to this, Your Honor.
BY MS. ALFONSO: Another thing ...
BY MR. VARNADO: (Interposing) ... and move for a mistrial.
BY MS. ALFONSO: ... where is the friend.
BY THE COURT: Overruled.
The Court's decision in Brown v. State, 200 Miss. 881, 27 So.2d 838 (1946), controls in this case. The general principle is that "the failure of either party to examine a witness equally accessible to both is not a proper subject of comment before the jury by either of the parties." Id. 27 So.2d at 840 (citing Heafner v. State, 196 Miss. 430, 17 So.2d 806, 808 (1944)). See also Doby v. State, 557 So.2d 533, 538-39 (Miss. 1990); Holmes v. State, 537 So.2d 882, 885 (Miss. 1988); Griffin v. State, 533 So.2d 444, 449 (Miss. 1988); Brock v. State, 530 So.2d 146, 154-55 (Miss. 1988); Williams v. State, 522 So.2d 201, 206-07 (Miss. 1988). However, "[t]he mere fact that a witness may be hailed into court by the compulsory process thereof at the instance of either party does not necessarily make such witness equally accessible to each, or both." Id.
[W]hile the person of a witness may be accessible to a party, and his physical presence to testify may be procured by process, that is not the whole question; it is also, whether or not the testimony of the witness is equally available to such party. It is one thing for the person of a witness to be available, and his presence at court obtainable, but it is entirely another thing that what he knows can be equally availed of by the other party.
Smith v. State, 187 Miss. 96, 101, 192 So. 436, 437 (1939).
There is no suggestion on this record that the witness in question was not equally available to the state. He is not identified as a person under the control of the defendant. Nor is he a close relative who would ordinarily be expected to be put in an unacceptable compromising position should he be called to testify as to the validity of Burke's alibi. Under the circumstances we must conclude that the court erred in failing to sustain the objection to this argument.
This Court has held that where there is substantial evidence supporting the defendant's guilt, a prosecutor's comment about a potential witness's absence is not reversible error in and of itself. Brock, supra, at 154-155. In Brock, the Court noted that a jury is more likely prejudiced where the evidence is close. Id. (citing Collins v. State, 408 So.2d 1376, 1380 (Miss. 1982)). Conversely, this Court has reversed cases on this ground alone where the prosecuting attorney remarked that the defendant did not call a particular witness. See, e.g., Holmes, 537 So.2d at 884-85; Madlock v. State, 440 So.2d 315, 317-18 (Miss. 1983); Morgan v. State, 388 So.2d 495, 497-98 (Miss. 1980). Additionally, where comments by the prosecuting attorney were coupled with other errors, this Court reversed decisions holding the accused was denied a fair trial. See Collins v. State, 408 So.2d at 1379-80; Griffin v. State, 533 So.2d at 449.
Here, the only evidence offered by Burke was his own testimony. He is also entitled to the reasonable inferences to be drawn from the evidence of the involvement of Stallworth and Ball. His own credibility is undermined by the conflicting versions of his whereabouts at the time of the burglary. Moreover, the possible involvement of Stallworth and Ball does not negate Burke's involvement. In contrast, the state's evidence was chiefly that of an independent *1242 eye witness whose testimony was not seriously impeached. That witness did not witness a burglary, however. What she saw was Burke at the scene of the burglary in the apartment where he had no right to be during the time period when the burglary was committed. In the end, we need not resolve the "harmless error" issue here because this error was compounded by another.

2.

DID THE TRIAL COURT ERR IN REFUSING TO GRANT PROPOSED JURY INSTRUCTION NO. D-4, THAT TESTIMONY OF AN ACCOMPLICE SHOULD BE CONSIDERED WITH CAUTION?
Burke assigns error to the trial court for its refusal to grant proposed instruction D-4, which states:
The Court instructs the jury that the testimony of alleged accomplices should be weighed with great caution and the jury may disbelieve their testimony all together, if they believe it untrue, the jury being the sole judge of the credibility of the witnesses.
This Court has embraced a principle that the granting of a cautionary instruction regarding the testimony of an accomplice witness is discretionary with the trial court. Wheeler v. State, 560 So.2d 171, 172 (Miss. 1990); Derden v. State, 522 So.2d 752, 754 (Miss. 1988); Van Buren v. State, 498 So.2d 1224, 1229 (Miss. 1986) and Holmes v. State, 481 So.2d 319, 322 (Miss. 1985). That discretion is not absolute, however; it may be abused.
Where the state's evidence rests solely upon the testimony of an accomplice witness, this Court has said that the trial court errs in failing to give a cautionary instruction. See Holmes v. State, 481 So.2d 319, 322-23; Hussey v. State, 473 So.2d 478, 480 (Miss. 1985). Additionally, the Court has found abuse of discretion where there is some question as to the reasonableness and consistency of the testimony of the accomplice or the defendant's guilt is not clearly proven. Green v. State, 456 So.2d 757, 758 (Miss. 1984).
In Holmes, this Court delineated a two-part test to determine whether a trial judge abused his discretion. First, was the witness in fact an accomplice, and secondly, was his testimony without corroboration. Holmes v. State, 481 So.2d at 323.
An accomplice for these purposes is a person who is implicated in the commission of the crime. That is to say, that if the evidence admits a reasonable inference that the witness may have been a co-perpetrator or the sole perpetrator the cautionary instruction should be given. Dedeaux v. State, 125 Miss. 326, 87 So. 664 (1921). Here, Stallworth admitted or, more accurately, alleged that she was approached to be a look-out. She wound up with the stolen property. We have only her word for whether she bought the property from Burke. Quite possibly she helped steal it, planned the stealing or, even, stole it. These inferences, arising as they do from the evidence, dictate that the proffered instruction be given.
The remaining question is whether there is sufficient corroboration to excuse the failure to give the instruction. On close examination, this is but another way of inquiring whether the failure to grant the instruction is harmless. See, Hussey v. State, 473 So.2d 478, 480-482 (Robertson, J., Specially concurring) and Davis v. State, 472 So.2d 428, 435-436 (Miss. 1985) (Hawkins, J., Dissenting) for a discussion of this issue.
Here, there is no corroboration of what Stallworth had to say. The eye witness supplies crucial evidence of guilt but does not corroborate Stallworth's testimony. No one else heard what she alleged Burke said. No one else saw Burke with the stolen goods. On this record we cannot say that Burke would have been convicted without Stallworth's testimony. The failure to give the accomplice instruction then, is not excused by corroboration. This failure, especially in combination with the error in failing to correct the reference to the absence of a witness not shown to have been unavailable to the state requires reversal. See, Griffin v. State, 533 So.2d 444, 449 (Miss. 1988).
*1243 After a thorough review of the record and the law in this case, we have no other alternative but to reverse the conviction and sentence and remand for a new trial.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN and PITTMAN, JJ., concur.
McRAE, J., not participating.