805 So.2d 577 (2001)
Mitchell WRIGHT, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00816-COA.
Court of Appeals of Mississippi.
September 25, 2001.
Rehearing Denied January 22, 2002.
*578 Jack R. Jones, III, Taylor, Jones, Alexander, Sorrell & McFall, Ltd., Southaven, Attorney for Appellant.
Office of the Attorney General by Billy L. Gore, Jackson, Attorney for Appellee.
Before McMILLIN, C.J., BRIDGES, and MYERS, JJ.
BRIDGES, J., for the Court:
¶ 1. On July 14, 1999, Mitchell Wright was indicted by a grand jury in DeSoto County, Mississippi for the sale of cocaine to an undercover narcotics agent. Subsequently, Wright was tried by a jury of his peers and was found guilty of this crime. The judge then sentenced Wright to thirty years in the custody of the Mississippi Department of Corrections with twenty-four years suspended and six years to be served. In addition, Wright was ordered by the judge to pay a fine of $1000, restitution to the DeSoto County Metro Narcotics *579 Unit in the amount of $125 and all costs of the court.
¶ 2. Wright appeals from this judgment and sentence citing that, due to several errors on the part of the trial court, he should have been granted a mistrial. Wright brings forth the following issues for the consideration of this Court:
1. Whether the trial court erred in failing to grant a new trial when it was discovered by the judge, post-trial, that a juror was living in Memphis, Tennessee at the time he was selected to serve on the jury?
2. Whether the trial court erred in failing to grant a mistrial after the prosecutor improperly characterized the defendant during closing argument, thereby prejudicing the defendant?
3. Whether the trial court erred in failing to grant a mistrial after the prosecutor commented during his closing argument on Wright's failure to call a certain alibi witness that was equally accessible to both parties?

FACTS
¶ 3. On January 7, 1999, Eddie Wayne Ray, an undercover agent working for the DeSoto County Metro Narcotics Unit, along with Curtis Walls, who was working with Ray, went to the home of Wright to purchase crack cocaine from him. Walls testified that he had known Wright for several years and that Wright had been involved with selling and taking drugs on many occasions. Wright denied that he knew Walls and testified that he did not know how Walls knew him. When Walls approached Wright's door to ask him for the cocaine while Ray remained in the car, Wright told him that he did not have any cocaine on him, but could get them some if Walls and Ray would give him a ride. Walls testified that he was driving his old truck and that Wright rode with them, directing Walls to a trailer park where Wright said that he could obtain the cocaine for them right away.
¶ 4. Upon arriving at the trailer park, Wright went into one of the trailers alone and came back to Walls's truck with six rocks of crack cocaine. After making the transaction with Ray, Wright was promptly arrested for the sale of cocaine. The substance that Walls and Ray obtained from Wright was tested by the crime laboratory and was found to be .87 grams that contained procaine and cocaine. Wright, however, denies that he was involved, saying that someone else who looked like him must have been at his house that day and must have been the person who took Walls and Ray to get the drugs. Wright claims that he was at work all day long. He called two of his sisters to testify that Wright always went to work every day, without fail, early in the mornings and did not return until 5:00 or 6:00 in the evenings. However, Walls and Ray both testified that the person who obtained the cocaine for them that day and the person who made the transaction with Ray was, in fact, the same man sitting in the defendant's chair at trial, Mitchell Wright.
¶ 5. At the close of the State's case in chief, Wright moved for a directed verdict on the ground that the State had failed to make a case against him. The motion was denied. At this point, the defense put on its case, with Wright testifying on his own behalf in addition to the testimony of Wright's sisters. According to Wright, he and Melvin Wright, a relative of Wright, were working at Hickory Ridge Apartments during the time that Ray and Walls say he was obtaining cocaine for them to purchase. At the close of Wright's defense, he renewed his motion for a directed verdict and the motion was again denied. The jury returned, after just minutes of *580 deliberation, with a unanimous verdict finding Wright guilty of the sale of cocaine.
¶ 6. Wright then filed a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. The motion was denied. Wright appeals to this Court and requests that the verdict and sentence be overturned because of fatal errors on the part of the prosecuting attorney and the court.

LEGAL ANALYSIS

1. Whether the trial court erred in failing to grant a new trial when it was discovered by the judge, post-trial, that a juror was living in Memphis, Tennessee at the time he was selected to serve on the jury?
¶ 7. Mississippi Code Annotated Section 13-5-1 (1972), sets out the criteria for competent jurors. Wright argues that because one juror who was picked to hear his case, Ronnie Rayborn, listed his address as Memphis, Tennessee, he should have been disqualified from serving on the jury in accordance with the statute's requirement that a juror be a resident freeholder of the county for more than one year. Miss.Code Ann. § 13-5-1 (1972). Wright cites the case of Brown v. State, 529 So.2d 537 (Miss.1988), to support his case. That case provides that "when the parties stipulated that a juror had served in violation of the statute and neither the state nor the defense was aware of such, Brown's motion for a new trial should have been granted." Id. at 540. While it may appear on the surface that the Brown case works in Wright's favor, we must look further.
¶ 8. In Brown, the main argument which caused a reversal of the trial court's judgment was that a juror did not respond to attorneys' questions during voir dire concerning whether she may be incompetent to serve because she had a case of her own pending in that same court. Id. A violation of that nature is "unequivocally prohibit[ed]" and a juror may not serve under any circumstances when this scenario occurs. Id. (citing Miss.Code Ann. § 13-5-1 (1972)). On the other hand, in cases such as Wright's, where some other qualification is in question, the statute itself provides that "[t]he lack of any such qualifications on the part of one or more jurors shall not, however, vitiate an indictment or verdict." Miss.Code Ann. § 13-5-1 (1972). See Brown, 529 So.2d at 540; Serio v. City of Brookhaven, 208 Miss. 620, 635, 45 So.2d 257, 261 (1950).
¶ 9. In our instant case, the evidence showed that Rayborn had been a resident of Mississippi for some time before he very recently moved to Memphis. In fact, it was provided by the judge in the record that Rayborn was still a registered voter in that county as he had just moved to Memphis less than three months before Wright's trial. In any event, the judge told Wright and his attorney that the fact that Rayborn now lived in Memphis did not give the defense grounds to obtain a mistrial or to have a new trial granted because of a tainted jury. See Brown, 529 So.2d at 540; Serio, 208 Miss. at 635, 45 So.2d at 261. While we note that Rayborn's lack of current residency does violate the resident freeholder requirement, we agree with the case law and find that this was not such an error as to require the verdict and sentence in this case to be overturned.

2. Whether the trial court erred in failing to grant a mistrial after the prosecutor improperly characterized the defendant during closing argument, thereby prejudicing the defendant?
¶ 10. During the prosecutor's closing argument at trial in the instant case, he *581 made the comment to the jury, "[n]obody picked Mitchell Wright out to go frame up on because there's too many Mitchell Wrights out there...." Wright objects to what he believes to be very prejudicial language categorizing him with other drug defendants. His attorney immediately objected to the prosecutor's comment during the closing argument and the judge sustained the objection. The judge further asked the jury to disregard the comment and Wright's counsel then moved for a mistrial. The judge denied the motion, but further admonished the jury to ignore the prejudicial and improper indications by the prosecution that Wright is just like any other common drug dealer. He specifically asked the jurors whether any of them would not be able to disregard the statement and none of the jurors demonstrated that they would have trouble with that demand. After verifying this with the jury, the judge allowed the closing argument by the State to continue.
¶ 11. Wright takes issue with the fact that a mistrial was not granted when the comment was made and his counsel's objection was sustained. The law provides that when an attorney is trying a criminal case, he should be very careful not to "indulge in personal abuse or vilification of the defendant." Curry v. State, 328 So.2d 328, 330 (Miss.1976) (citing Stewart v. State, 263 So.2d 754 (Miss.1972)). The jury is supposed to base its decision on the evidence presented throughout the trial and not on an attorney's comments during summation of the case. Curry, 328 So.2d at 330. The court is required to declare a mistrial upon the defendant's motion if the improper statements by the prosecuting attorney result in "substantial and irreparable" prejudice to the defendant's position. Bass v. State, 597 So.2d 182, 191 (Miss.1992). The trial judge is in the best position to measure the prejudicial effect of the objectionable statements. Id.; King v. State, 580 So.2d 1182, 1189 (Miss.1991). As such, this Court may not overturn his decision unless we find that he abused his discretion in ruling to deny the motion for mistrial. Bass, 597 So.2d at 191.
¶ 12. In King v. State, the Mississippi Supreme Court held that the prejudicial effect of these improper comments may be "sufficiently alleviated if the judge instructs the jury to disregard [them]." King, 580 So.2d at 1189. However, "[i]n such cases where the prejudicial effect of what the jury heard was such that no amount of subsequent admonition from the trial judge would be likely to eradicate from the jury's mind the prejudicial effect, we reverse, although such occasions are rare." Id. (quoting Weaver v. State, 497 So.2d 1089, 1094 (Miss.1986)). Generally, when an objection is sustained by the judge due to unacceptable statements by an attorney or a witness, and the jury is instructed to ignore such statements or testimony, an appellate court will not find error. Wright v. State, 540 So.2d 1, 4 (Miss.1989); Wetz v. State, 503 So.2d 803, 810 (Miss.1987); May v. State, 460 So.2d 778, 783 (Miss.1984).
¶ 13. In the case at bar, we find that Wright was not substantially or irreparably prejudiced by the comments of the prosecutor. The judge admonished the jury to disregard the comment, he sustained the defense's objection and then asked the jury to respond to the question of whether any one of them could not ignore the comments about "the Mitchell Wrights out there." Not one juror indicated that this was a problem. Further, according to the case law provided, the fact that the judge did these things, in our opinion, sufficiently alleviates any doubt about the lack of prejudicial effect on the jury. We are not convinced that this is *582 one of those rare cases where there would be nothing that the judge could do or say to correct an injustice caused by the prosecuting attorney. Because we find that the trial judge did not abuse his discretion in denying Wright's motion for mistrial, we find no merit to this issue.

3. Whether the trial court erred in failing to grant a mistrial after the prosecutor commented during his closing argument on Wright's failure to call a certain alibi witness that was equally accessible to both parties?
¶ 14. This issue revolves around the following statements made by the prosecuting attorney in his closing argument: "[i]f we had called his uncle [, Melvin Wright,] to bring in them records, we'd known if [the defendant] was at work."; "Putting on an alibi witness, [the defense] could have easily substantiated that." Wright claims that these statements are in violation of trial procedure because it is well established that one party may not discuss in front of the jury any witnesses that the opposing party did not call to the stand. In fact, in many cases, Wright would be correct. See Ruffin v. State, 724 So.2d 942 (¶ 21-22) (Miss.Ct.App.1998); Ross v. State, 603 So.2d 857, 864 (Miss. 1992); Burke v. State, 576 So.2d 1239, 1241 (Miss.1991); Holmes v. State, 537 So.2d 882, 884 (Miss.1988); Madlock v. State, 440 So.2d 315, 317-18 (Miss.1983).
¶ 15. In Wright's own case, however, we find that the trial court was justified in overruling the defense's objection to these comments regarding the missing witness and denying Wright a new trial. In Burke v. State, the Mississippi Supreme Court addressed the same issue we have before us. Burke, 576 So.2d at 1241. The prosecutor in that case also made statements before the jury regarding witnesses that the defense did not call to the stand during trial. Id. The court reasoned that "the failure of either party to examine a witness equally accessible to both is not a proper subject of comment before the jury by either of the parties." Id. However, the court also concluded that "[i]t is one thing for the person of a witness to be available, and his presence at court obtainable, but it is entirely another thing that what he knows can be equally availed of by the other party." Id.
¶ 16. In Ruffin v. State, the court opined that when a defendant chooses not to call a potential witness for his defense to the stand and it is a witness that is more available to him and/or in a closer relationship to him than to the prosecution, the prosecution may be allowed to comment on the defense's failure to call that witness. Ruffin, 724 So.2d at (¶ 22). See also Ross, 603 So.2d at 864; Brown v. State, 200 Miss. 881, 27 So.2d 838, 840 (1946). The court called this type of relationship a "community of personal interest," such that the witness could not have been equally available to both parties. Ross, 603 So.2d at 864-65.
¶ 17. In addition, the Mississippi Supreme Court provided that "where there is substantial evidence supporting the defendant's guilt, a prosecutor's comment about a potential witness's absence is not reversible error in and of itself." Burke, 576 So.2d at 1241.
¶ 18. In our instant case, we are convinced that Wright was not entitled to a mistrial because of the comments made by the prosecutor regarding Wright's failure to call Melvin Wright (the man with whom Wright claimed to be working at the time that Walls and Ray came to his home to ask him for cocaine) as a witness at trial. First, defense counsel admitted in open court that Melvin Wright's name had not been disclosed to the prosecution as a *583 potential alibi witness for the defense during the discovery process. The record reflects that the prosecution did not receive such notice, in fact, until the day before these closing arguments. The trial judge found this "too little, too late" disclosure unacceptable and therefore overruled Wright's objection to the prosecution's statements to the jury about the defense not calling Wright to the witness stand.
¶ 19. Secondly, we find that Melvin Wright was not necessarily equally available to both Wright and the prosecution here. We note that Melvin Wright could not have been just as accessible to the prosecution as he was to the defense when the prosecution was not even aware that he was a potential alibi witness for the defense until very near the close of trial. Furthermore, the record reveals that Melvin Wright was in a closer relationship to the defense because of his familial ties with Mitchell Wright and because of their close working relationship. We find that these ties fall under the "community of personal interest" scenario that the court spoke of in Ross. Ross, 603 So.2d at 864-65.
¶ 20. In addition to the above analysis, we also believe that there was substantial evidence put on by the prosecution proving Wright's guilt. There were two eyewitnesses who testified about the sale of cocaine conducted by Wright, Ray and Walls, one of which is an officer of the law. These two witnesses identified Wright, without any problem or hesitation, as the man who obtained and sold them cocaine on the day in question. It is our opinion that Wright would have been convicted on the evidence presented to the jury alone. As such, we find that even if the prosecutor's comments regarding Melvin Wright's absence as a witness were in error, they were harmless error and should not work to overturn either the verdict against Wright or his sentence. See Burke, 576 So.2d at 1241.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF THE SALE OF COCAINE AND SENTENCE OF THIRTY YEARS, WITH TWENTY FOUR YEARS SUSPENDED, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS. FINE OF $1,000, AND TO PAY RESTITUTION IN THE AMOUNT OF $125 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., THOMAS, LEE, MYERS, and CHANDLER, JJ., CONCUR.
IRVING, J. DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J. BRANTLEY, J., NOT PARTICIPATING.
IRVING, J., DISSENTING:
¶ 22. The majority concludes, as did the trial court, that it is legally permissible for a nonresident of the State of Mississippi to sit on a Mississippi trial jury. In support of its position, the majority relies upon the following language found in Mississippi Code Annotated Section 13-5-1 (1972): "[t]he lack of any such qualifications on the part of one or more jurors shall not, however, vitiate an indictment or verdict." Majority Opinion at (¶ 8). Because I believe the majority has misconstrued the stated code section, I must respectfully dissent.
¶ 23. The pertinent portion of Mississippi Code Annotated Section 13-5-1 (1972) states:
Every citizen not under the age of twenty-one years, who is either a qualified elector, or a resident freeholder of the county for more than one year, is able to *584 read and write, and has not been convicted of an infamous crime, or the unlawful sale of intoxicating liquors within a period of five years and who is not a common gambler or habitual drunkard, is a competent juror. No person who is or has been within twelve months the overseer of a public road or road contractor shall, however, be competent to serve as a grand juror. The lack of qualifications on the part of one or more jurors shall not, however, vitiate an indictment or verdict.

(emphasis added).
¶ 24. It appears obvious and logical that in order to give full and complete meaning to all of the language which I have italicized in the statute, the "lack-of-qualifications" language cannot be read to include lack of citizenship under the qualification umbrella. To do so would constitute a rewriting of the statute to read "every person not under the age of twenty-one ... is a competent juror." In other words, I believe that the proper construction of the statute is that a verdict will not be set aside if it is returned by a jury composed of a citizen who lacks one or more of the qualifications delineated.
¶ 25. The State cites the case of Fulcher v. State, 82 Miss. 630, 35 So. 170 (1903), which was decided almost a century ago, in support of its position that Wright is not entitled to a new trial. It is true that Fulcher held that a criminal defendant was not entitled to a new trial even though an alien served on the jury panel which convicted him. Id. at 633, 35 So. at 170. In affirming the defendant's conviction in Fulcher, the Mississippi Supreme Court held that the objection, concerning the jury service of the alien juror, was made too late (post verdict). Id.
¶ 26. Although the complaint regarding the nonresident juror in our case was made in a post-trial motion, I, nevertheless, find Fulcher distinguishable as will be discussed in more details later in this opinion. As part of its rationale, the Fulcher decision cited Section 264 of Article 14 of the Mississippi Constitution of 1890 which at that time read in relevant part as follows:
Section 264 of Article 14 of the Mississippi Constitution of 1890:
No person shall be a grand or petit juror unless a qualified elector and able to read and write; but the want of any such qualification in any juror shall not vitiate any indictment or verdict. The legislature [sic] shall provide by law for procuring a list of persons so qualified, and the drawing therefrom of grand and petit jurors for each term of the circuit court.
¶ 27. In 1960, Section 264 of Article 14 was amended to read:
The legislature [sic] shall, by law, provide for the qualifications of grand and petit jurors. The legislature [sic] shall provide by law for procuring a list of persons so qualified, and the drawing therefrom of grand and petit jurors for each term of the circuit court.
¶ 28. In 1970, pursuant to the authority granted by the amended Section 264 of Article 14, the Mississippi Legislature amended Section 1762 of the Mississippi Code of 1942. That section was brought forward as 13-5-1 in the Mississippi Code of 1972, and the relevant portion of it now reads:
Every citizen not under the age of twenty-one (21) years, who is either a qualified elector or a resident freeholder of the county for more than one year, is able to read and write, and has not been convicted of an infamous crime, or the unlawful sale of intoxicating liquors within a period of five (5) years and who is not a common gambler or habitual *585 drunkard, is a competent juror ... but the lack of any such qualifications on the part of one or more jurors shall not vitiate an indictment or verdict....
In order to determine that prospective jurors can read and write, the presiding judge shall with the assistance of the clerk distribute to the jury panel a form to be completed personally by each juror prior to being empaneled....
The judge shall personally examine the answers of each juror prior to empaneling the jury and each juror who cannot complete the above form shall be disqualified as a juror and discharged.
(emphasis added).
¶ 29. Based on the statutory requirement that the presiding judge "personally examine the answers of each juror prior to empaneling," it appears to me that the trial court bears the primary responsibility for presenting to trial counsel a venire of competent jurors. One of the items to be completed on the form, that is mandated by Section 13-5-1, is the home address of each juror. In our case, the nonresident juror listed his home address as Memphis, Tennessee. Surely, this should have been caught by the trial judge. As stated, the responsibility for pre-screening the venire panel to weed out incompetent jurors was placed on the shoulders of the trial judge by the Legislature in 1970.[1] When Fulcher was decided, no such requirement existed. This is the first distinction between our case and Fulcher.
¶ 30. Secondly, the Fulcher court's decision appears to be based, at least in part, on the fact that the record did not show that the juror's alien status was unknown to the accused or his counsel when the juror was accepted. This is what the Fulcher court said on this point: "Moreover, it nowhere appears, by affidavit or otherwise, that this fact was unknown to the accused or his counsel when the juror was accepted." Fulcher, 82 Miss. at 633, 35 So. at 170.
¶ 31. In our case, it appears that neither the trial judge nor any of the attorneys caught the fact that the juror listed his home address in Memphis, Tennessee until some time after the juror had been seated. However, it is unclear in the record as to exactly when this matter came to the attention of the trial court. The record reflects that the trial court brought the matter to the attention of defense counsel some time prior to the hearing on posttrial motions. Therefore, unlike the situation in Fulcher, here the record is clear that the fact of the juror's nonresident status was unknown to Wright prior to the juror being seated. This is another distinction between our case and Fulcher. In making this distinction, I am mindful of the fact that all parties could have discovered the juror's residential status prior to the juror being seated. However, there is a difference between a known fact and a discoverable fact.
¶ 32. Mississippi law makes it "`unlawful for any person who is not a citizen of the United States or the State of Mississippi to register to vote in any primary, special or general election in the state.'" Miss.Code Ann. § 23-15-21 (Rev.1990). It is hard to imagine that no violation of due process inures to the benefit of a criminal defendant who is convicted by a jury composed of a nonresident when our law makes it a crime for that nonresident to *586 register to vote in our state. This indeed would be an anomaly nestled among the constitutional protections afforded criminal defendants.
¶ 33. Further, it appears to me that a defendant who is tried by a nonresident is hardly tried by a jury of his peers. Section 26 of Article 3 of the Mississippi Constitution of 1890 provides, inter alia, that "[i]n all criminal prosecutions the accused shall have a right to ... a speedy and public trial by an impartial jury of the county where the offense was committed." (emphasis added). In this case, a trial by a jury composed of a Tennessee resident is hardly a jury of the county where the offense was committed when the offense was committed in DeSoto County, Mississippi.
¶ 34. To construe Mississippi Code Annotated Section 13-5-1 (1972) as permitting a nonresident to serve on a criminal jurybecause nonresidency is not one of the specific disqualifications listedis to place that code section in conflict with Section 26 of Article 3 of our constitution which guarantees to a criminal defendant the right to a trial by a jury of the county where the offense was committed.
¶ 35. Because of the magnitude of the constitutional issue involved, I believe that neither the trial court's nor Wright's failure to catch the oversight prior to the verdict is sufficient to justify not granting relief here. I would reverse and remand for a new trial.
KING, P.J., JOINS THIS SEPARATE OPINION.
NOTES
[1] I am mindful that the statute mentions the presiding judge's responsibility in connection with only one qualification, that is, the requirement that each juror be able to read and write. However, any argument that the mentioning of only one qualification insulates the presiding judge from any responsibility to notice other disqualifications and excuse jurors accordingly, is totally illogical and nonsensical.