ROBERTS, J.,
 

 for the Court:
 

 ¶ 1. To prove aggravated assault, it generally must be shown beyond a reasonable doubt that the accused purposefully, knowingly, or recklessly caused serious bodily injury to another. Michael Eugene Welch
 
 *1233
 
 was indicted, tried, and convicted on three counts of aggravated assault after opening fire from an automobile upon the occupants of an adjacent vehicle. In addition to his claim of ineffective assistance of counsel, we are asked whether the trial court erroneously denied Welch’s motion for a new trial — that is, whether his conviction is against the overwhelming weight of the evidence. Given the testimonies of the victims of the shooting and the driver of Welch’s vehicle, we hold that the trial court did not err and affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On March 21, 2007, at approximately 11:30 p.m., Tony Raiford was driving on Airport Road in Gulfport, Mississippi, on his way home. Tony was approximately seventeen years old at the time. Also in Tony’s car were his two younger brothers, Ladarius and Damion Raiford, his cousin Kevin Henry, and a friend named Allen Barnett. Their approximate ages were sixteen, fourteen, eight, and seventeen, respectively. As they slowed at a stop light, a grey Ford Expedition pulled along beside them in the adjacent lane. A young woman was driving the Expedition, and a young man was in the front-passenger seat. The pair was later identified as Juri-nea Dunklin and Welch.
 

 ¶ 3. A conversation ensued between the occupants of both vehicles when Ladarius mentioned that Dunklin resembled a resident of County Hills, which is a neighborhood next to the Raiford brothers’ neighborhood. But the situation took a turn for the worst when Barnett made a derogatory comment toward Dunklin. At this point, the traffic light turned green, and Tony pulled away. However, Dunklin flashed the Expedition’s headlights, indicating she wanted Tony to stop. At the next traffic light, more words were exchanged concerning Barnett’s statement, and Welch started shooting. Tony was shot in the shoulder; Damion was shot in the jaw and neck; and Ladarius was shot in the arm. After the shooting, Dunklin sped away, and Tony drove to the Gulfport Memorial Hospital.
 

 ¶ 4. Detective Sergeant Gary Ponthieux, with the Gulfport Police Department, was notified of the shooting shortly after the boys had been admitted to the hospital. Detective Ponthieux arrived at the hospital and learned a general description of Dunk-lin’s vehicle and its two occupants by interviewing Ladarius. But Barnett had taken Tony’s vehicle and driven Kevin to the Oneal Road Apartments complex. Once Detective Ponthieux was finished at the hospital, he proceeded to Oneal Road Apartments. Once there, he inspected Tony’s vehicle and interviewed Barnett. During the interview, Barnett’s statement was consistent with what Detective Pon-thieux had learned at the hospital.
 

 ¶ 5. The Expedition involved in the shooting was found the next day. It was found at the residence of Adam Lemay, who is also the vehicle’s registered owner and Dunklin’s husband. Lemay initially stated that he was asleep at the time of the shooting and that he thought the Expedition was in his garage all night. Detective Ponthieux discounted his involvement in the shooting because Lemay did not fit the general description of the shooter. A few days later, on March 25, 2007, Lemay contacted the police department and informed the police that he had found a .40-caliber-bullet shell while he was cleaning his vehicle. But during the investigation the one intact bullet recovered was estimated to be .38-caliber. During a subsequent interview, Lemay told Detective Ponthieux that he believed Dunklin and Welch were involved in the shooting.
 

 ¶ 6. A photographic lineup, or “six pack,” containing a picture of Dunklin was shown
 
 *1234
 
 to Tony, Damion, and Ladarius. Tony and Ladarius immediately identified Dunklin as the driver. But Damion was unable to identify her, as he did not get a very good look at the driver. Subsequently, after Detective Ponthieux and other police officers executed a search warrant of Lemay’s home, Dunklin and Welch were arrested. Detective Ponthieux took a picture of Welch and developed another “six pack” to show the victims. He showed the “six pack” to Tony, Ladarius, and Damion, separately, and each identified Welch as the person who had shot them. A few months later, on June 6, 2007, Barnett was also shown the “six pack” containing Welch’s picture. Barnett also identified Welch as the shooter, but he changed his story at trial. Additional facts, as needed, will be discussed below.
 

 ¶ 7. Welch was indicted on three counts of aggravated assault pursuant to Mississippi Code Annotated section 97 — 3—7(2)(a) (Supp.2008). Dunklin was also indicted under the same multi-count indictment as an accessory-after-the-fact pursuant to Mississippi Code Annotated section 97-1-5 (Rev.2006). The indictment was later amended to reflect Welch’s status as a habitual offender under Mississippi Code Annotated section 99-19-81 (Supp.2008). Welch’s trial was held on July 29-30, 2008, in the Circuit Court of Harrison County. At the conclusion of the trial, the jury found Welch guilty of three counts of aggravated assault. As a result, Welch was sentenced by the trial court as a habitual offender to a total of forty years in the custody of the Mississippi Department of Corrections. Welch filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial and a motion for reconsideration of his sentence. But both motions were denied by the trial court. Welch subsequently appealed his convictions and sentences.
 

 DISCUSSION
 

 I. WHETHER WELCH’S TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO REQUEST A JURY INSTRUCTION REGARDING ACCOMPLICE TESTIMONY
 

 ¶8. As a general rule, claims of ineffective assistance of counsel are better suited for consideration in post-conviction relief proceedings.
 
 [1]
 
 Therefore, if the issue is raised on direct appeal, an appellate court should only reach its merits where: “(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.”
 
 [2]
 

 ¶9. In his brief to this Court, Welch stipulates to the second provision above. Admittedly, while the State does not explicitly concede that the record is adequate to proceed with a consideration of the merits of this issue, it does not claim otherwise. Further, the State affirmatively argues that Welch’s trial counsel was not ineffective. Therefore, we will proceed with our analysis of Welch’s claim of ineffective assistance of counsel based upon the parties’ stipulation that the record is adequate to proceed.
 

 ¶ 10. To prove ineffective assistance of counsel, a defendant must show (1) that his counsel’s performance was deficient and (2) that this deficiency prejudiced his defense.
 
 [3]
 
 The burden of proof rests with the
 
 *1235
 
 defendant.
 
 [4]
 
 Under
 
 Strickland,
 
 there is a strong presumption that counsel’s performance falls within the range of reasonable professional assistance.
 
 [5]
 
 To overcome this presumption, “[t]he defendant must show that there is a reasonable probability that, but for the counsel’s unprofessional errors, the result of the proceeding would have been different.”
 
 [6]
 
 “To prevail on this claim, [the defendant] must show under
 
 Strickland
 
 that counsel’s conduct ‘so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.’ ”
 
 [7]
 

 ¶ 11. Welch argues his trial counsel was ineffective because he had failed to request that the trial court instruct the jury regarding the unreliability of accomplice testimony. In order to determine if a trial court abused its discretion in refusing to grant an accomplice jury instruction, it must first be determined that the witness was an accomplice ■ and, second, that the witness’s testimony was uncorroborated.
 
 [8]
 
 Moving past the initial determination of whether Dunklin was an accomplice, it is clear that her testimony regarding Welch’s actions on the night of the shooting were far from uncorroborated. Tony, Damion, and Ladarius identified Welch from a photographic lineup and at trial as the individual who had shot them. Therefore, it would have been squarely within the trial court’s discretion as to whether to grant or deny the jury instruction.
 

 ¶ 12. Moving to the heart of the issue, even assuming that Welch’s trial counsel’s failure to request a jury instruction regarding accomplice testimony was deficient representation, Welch cannot demonstrate that the result of his trial would have been different. Regardless of whether the trial court chose to grant an accomplice instruction, the same evidence that corroborates Dunklin’s testimony also prevents Welch from satisfying the second prong of
 
 Strickland.
 
 Even if the jury chose not to believe Dunklin’s testimony, or viewed it with suspicion if so instructed, it cannot be reasonably said that it would have changed its verdict given the remaining testimonies against Welch. Therefore, we hold that this issue is without merit.
 

 II. WHETHER THE TRIAL COURT ERRED IN DENYING WELCH’S MOTION FOR A NEW TRIAL
 

 ¶ 13. The standard of review for claims that a defendant’s motion for a new trial was wrongfully denied is stated as follows:
 

 [An appellate court] must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction unconscionable injustice.
 
 [9]
 

 
 *1236
 
 “There is a presumption that the judgment of the trial court is correct, and the burden is on the appellant to demonstrate some reversible error to [the appellate court].”
 
 [10]
 

 ¶ 14. Section 97-3-7(2)(a) states that “[a] person is guilty of aggravated assault if he ... attempts to cause serious bodily injury to another, or causes injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.” Although Welch argues that none of the State’s witnesses were able to identify him as the shooter, the record is clear that such was not the case. Dunklin testified that Welch was the shooter. And this was corroborated by the three victims. This is not to say that there were not inconsistencies in all the testimonies heard by the jury. Welch testified that Lemay was also in the vehicle and was the actual shooter. He explained that Lemay used a .38-caliber revolver and threw the gun over a bridge. Additionally, despite his previous identification of Welch as the shooter, Barnett’s testimony was consistent with Welch’s. That is, a third individual, who matched Lema/s description, was also in the vehicle. Barnett testified that the third individual was the shooter. Curiously, during his interviews with Detective Ponthieux, Barnett never mentioned the presence of a third individual. Finally, Melinda Welch, Welch’s mother, testified that Dunklin and Welch told her that Lemay was setting them up.
 

 ¶ 15. But “[i]t is a well-settled principle of law that issues of weight and credibility of [a] witnesses] testimony are within the sole province of the jury as fact-finder.”
 
 [11]
 
 Here the jury heard all the evidence and found Welch guilty. Viewing the evidence the supports that verdicts as true, we cannot say that the trial court abused its discretion in denying Welch’s motion for a new trial as the weight of the evidence against Welch was substantial. This issue is without merit.
 

 ¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF COUNTS I-III, AGGRAVATED ASSAULT, AND SENTENCE AS A HABITUAL OFFENDER OF TWENTY YEARS FOR EACH COUNT, WITH THE SENTENCE IN COUNT I TO RUN CONSECUTIVELY TO THE SENTENCES IN COUNTS II AND III, THE SENTENCE IN COUNT II TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I AND CONCURRENTLY TO THE SENTENCE IN COUNT III, AND THE SENTENCE IN COUNT III TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I AND CONCURRENTLY TO THE SENTENCE IN COUNT II, FOR A TOTAL OF FORTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 .Pittman v. State,
 
 836 So.2d 779, 788 (¶ 43) (Miss.Ct.App.2002).
 

 [2]
 

 .Wilcher v. State,
 
 863 So.2d 776, 825 (¶ 171) (Miss.2003) (citation omitted).
 

 [3]
 

 .Strickland v. Washington,
 
 466 U.S. 668, 687,
 
 *1235
 
 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 

 [4]
 

 .
 
 McQuarter v. State,
 
 574 So.2d 685, 687 (Miss.1990).
 

 [5]
 

 .
 
 Strickland,
 
 466 U.S. at 689, 104 S.Ct. 2052.
 

 [6]
 

 . Id.
 
 at 694, 104 S.Ct. 2052.
 

 [7]
 

 .
 
 Havard v. State,
 
 928 So.2d 771, 790 (¶ 32) (Miss.2006) (quoting
 
 Strickland,
 
 466 U.S. at 686, 104 S.Ct. 2052).
 

 [8]
 

 .
 
 Burke v. State,
 
 576 So.2d 1239, 1242 (Miss.1991) (citing
 
 Holmes v. State,
 
 481 So.2d 319, 323 (Miss.1985)).
 

 [9]
 

 .
 
 Valmain v. State,
 
 5 So.3d 1079, 1086 (¶ 30) (Miss.2009) (quoting
 
 Todd v. State,
 
 806 So.2d 1086, 1090 (¶ 11) (Miss.2001)).
 

 [10]
 

 .
 
 Id.
 
 (quoting
 
 King v. State,
 
 857 So.2d 702, 731 (¶ 104) (Miss.2003)).
 

 [11]
 

 .
 
 King v. State,
 
 798 So.2d 1258, 1262 (¶ 14) (Miss.2001) (citing
 
 Humphrey v. State,
 
 759 So.2d 368, 387 (¶ 60) (Miss.2000) (overruled on other grounds)).