IRVING, J.,
 

 for the Court:
 

 ¶ 1. A jury in the Holmes County Circuit Court found Eddie Timms guilty of possession of a firearm by a convicted felon and possession of a stolen firearm. The circuit court then sentenced Timms to serve five years in the custody of the Mississippi Department of Corrections (MDOC) for the possession of a firearm by a convicted felon, with three years suspended and two years to serve, and to serve five years in the custody of the MDOC for the possession of a stolen firearm. The circuit court ordered that the sentences be served consecutively, for a total of seven years in the MDOC’s custody. Unhappy with his convictions, Timms appeals and asserts that: (1) the State violated his right to a fair trial when the prosecutor commented on Timms’s failure to call certain witnesses; (2) Timms’s trial counsel’s performance was so deficient that Timms was denied a fair trial; (3) the circuit court, on its own motion, should have prevented the introduction of evidence that Timms was previously charged with, but not convicted of, possession of a stolen firearm; and (4) cumulative errors deprived Timms of his right to a fair trial.
 

 ¶2. We find that Timms’s trial counsel was ineffective, and we reverse and remand for a new trial. We also find that the State improperly commented on Timms’s failure to call certain witnesses. Timms’s complaint that the circuit court should have sua sponte suppressed evidence and his cumulative-error complaint are moot due to our remand of his case.
 

 FACTS
 

 ¶ 3. On February 18, 2008, Officer Leo Ellington, then with the Goodman, Mississippi Police Department, received a call
 
 *312
 
 stating that someone had a gun at a nearby apartment complex. Officer Ellington, Chief Noah Coffee, and other officers were sitting in their patrol cars at a BP gas station in Goodman at the time. The caller stated that the individual with the gun had left in a vehicle and gave a description of the vehicle. Shortly thereafter, the officers observed a vehicle fitting the caller’s description; they stopped the vehicle to investigate further.
 

 ¶ 4. When Officer Ellington looked into the vehicle, he noticed Timms sitting in the backseat; Officer Ellington recognized Timms from prior contact with him. De-Andre Moore was driving the vehicle, and Joel Landfair and Phyllis Moore
 
 [1]
 
 were passengers in the vehicle. According to Officer Ellington, shortly after the vehicle stopped, Timms, Landfair, and DeAndre exited the vehicle. Officer Ellington testified that DeAndre and Landfair then returned to the vehicle after being asked to do so by law enforcement. According to Officer Ellington, DeAndre denied having any firearms in the vehicle; Officer Ellington then asked for permission to search the vehicle, which DeAndre granted. When asked to open the trunk of the vehicle, DeAndre complied. Officer Ellington testified that Timms was leaning against the trunk and had to be asked to move before it could be opened. Inside the trunk, officers found two shotguns. Officer Ellington testified that Timms stated, without being questioned, that the guns belonged to him. Officer Ellington stated that Timms claimed to need the guns because “something about somebody been stealing some dogs from him.... ”
 

 ¶ 5. Officer Ellington testified that he performed a background check on one of the shotguns that was recovered from the vehicle and that the gun actually belonged to the Goodman Police Department. During cross-examination, Officer Ellington confirmed that the original call that came to the police had concerned DeAndre’s possession of a firearm, not Timms’s. Officer Ellington stated that Timms was not arrested at the scene but that he was arrested later; Officer Ellington testified that no one else was ever arrested in connection with the firearms. Timms’s trial attorney also asked Officer Ellington several questions about whether Timms had a prior conviction for possession of a stolen firearm and whether that hypothetical possession should have had an impact on Timms’s behavior at the scene. Immediately upon redirect, the prosecutor introduced a notice of criminal disposition; Timms’s attorney did not object to the disposition’s introduction. The prosecutor then had Officer Ellington read to the jury from the criminal disposition, which indicated that Timms had been indicted for and convicted of possession of cocaine enhanced by possession of a firearm. The prosecutor then intimated that Timms might have been arrested instead of DeAn-dre because of his prior felony:
 

 Q. You were asked why the other people weren’t charged. To your knowledge, personal knowledge, do you know whether or not the driver had a prior felony conviction?
 

 A. No, sir.
 

 ¶ 6. After Officer Ellington testified, Chief Coffee took the stand. Chief Coffee’s testimony was mostly consistent with Officer Ellington’s. Chief Coffee recalled only Timms and DeAndre exiting the vehicle, rather than Timms, DeAndre, and Landfair. Chief Coffee stated that Timms not only claimed possession of the two shotguns, but also asked the officers to allow him to retain possession of the shotguns so that he could use them to take
 
 *313
 
 care of his dogs. Chief Coffee testified that he pointed out to Timms that he was not allowed to possess firearms and that Timms responded that he believed he was allowed to possess a shotgun. During cross-examination, Chief Coffee explained that he did not check the guns for fingerprints because Timms had claimed possession of them.
 

 ¶ 7. No other witnesses testified on behalf of the State. Timms took the stand as his sole witness. Timms testified that he did not know anything about the shotguns in the car and that he returned to the car immediately after exiting it, thereby contradicting the officers’ testimonies that he exited the car and remained standing outside it. Timms denied claiming possession of the guns. During direct testimony, the following exchange occurred between Timms and his attorney:
 

 Q. Okay. As a sane person, knowing that you had been [sic] convicted of possession of a firearm in the past, would it have been logical for you to have said these are my guns in the trunk?
 

 A. No, I did not say that.
 

 During cross-examination, Timms testified that he was friends with the other occupants of the car. Timms denied having ever owned any dogs. Timms agreed with the prosecutor that he generally did not exit vehicles for traffic stops and that his decision to exit DeAndre’s vehicle on the night in question was unusual.
 

 ¶ 8. During closing argument, the prosecutor made the following remarks:
 

 All he had to do was push a button. And he didn’t have to testify. That was his God-given right and you couldn’t hold it against him. But since he chose to testify, I can comment on his case and the evidence that was presented. Where are DeAndre Moore, Phyllis Moore, and Joel Landfair? He’s got access to the clerk’s office just like we do. He can subpoena anybody he wants to, and that door would have been busting [sic] wide open with folks coming to his aid if there was a person in existence that could have come to his aid. And the reason it didn’t happen is because there was nobody that could testify for him.
 

 Although Timms’s trial attorney did not object to these statements by the prosecutor, he did respond to them during his own closing argument:
 

 The D.A. said that we could have had all these witnesses here. Ladies and gentlemen, I know you can’t check the docket, the court file, but we did subpoena— attempt to subpoena witnesses. But, I mean, hey, if I was one of those other three people, I wouldn’t want to come up here because, boom, who gets charged next. If they had come up here to testify for Mr. Timms against the State, you know, any logical person would think, hey, I’m gonna be next.
 

 ¶9. After approximately two hours of deliberation, the jury returned a verdict of guilty on both counts. Five days after trial, Timms filed a motion for a new trial or, in the alternative, for a judgment notwithstanding the verdict. The circuit court denied Timms’s motion. About two weeks after the trial, Timms’s family retained a new attorney for him.
 

 ¶ 10. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 1. Prosecutorial Misconduct
 

 ¶ 11. Timms first contends that the prosecutor improperly commented on Timms’s decision to not call Landfair,
 
 *314
 
 Phyllis, and DeAndre as witnesses. As stated, Timms’s trial attorney did not object to the prosecutor’s comments but, instead, attempted to explain why the witnesses had not been called.
 

 ¶ 12. Under Mississippi law, “the failure of either party to examine a witness equally accessible to both parties is not a proper subject for comment before a jury.”
 
 Holmes v. State,
 
 537 So.2d 882, 885 (Miss.1988). In
 
 Holmes,
 
 Edward Holmes’s conviction was reversed and remanded due to the prosecutor’s comment on Holmes’s failure to call a witness.
 
 Id.
 
 However, “where there is substantial evidence supporting [a] defendant’s guilt, a prosecutor’s comment about a potential witness’s absence is not reversible error in and of itself.”
 
 Randall v. State,
 
 806 So.2d 185, 211 (¶ 59) (Miss.2001) (quoting
 
 Burke v. State,
 
 576 So.2d 1239, 1241 (Miss.1991)). Generally, “a jury is more likely prejudiced where the evidence is close.”
 
 Id.
 
 (quoting
 
 Burke,
 
 576 So.2d at 1241).
 

 ¶ 13. Timms did not object to the prosecutor’s statements when they were made. Regardless, the prosecutor’s comments were improper. There is no indication that any of the named individuals were any more accessible to Timms than they were to the State; therefore, the prosecutor should not have commented on Timms’s failure to call those witnesses. In the absence of an objection by Timms, Timms can succeed on this claim only if the improper comments rise to the level of plain error.
 
 Parker v. State,
 
 30 So.3d 1222, 1227 (¶ 14) (Miss.2010). We find that we need not determine whether they did, as we are remanding Timms’s case for a new trial. On remand, however, the prosecutor should refrain from commenting on Timms’s failure to call any witnesses who are equally available to the State.
 

 2. Ineffective Assistance of Counsel
 

 ¶ 14. Timms complains that his trial counsel did not seek a stipulation as to Timms’s status as a convicted felon prior to trial, failed to object when the State introduced evidence regarding Timms’s criminal history, asked a witness to provide hearsay evidence prejudicial to Timms, and failed to investigate Timms’s criminal history. We agree that Timms’s counsel’s representation fell far below the standards required to render effective assistance of counsel.
 

 ¶ 15. An appellate court will review a claim for ineffective assistance of counsel on direct appeal only if “the presented issues are based on facts fully apparent from the record.”
 
 Parker v. State,
 
 30 So.3d 1222, 1232 (¶ 86) (Miss.2010) (citing
 
 Archer v. State,
 
 986 So.2d 951, 955 (¶ 16) (Miss.2008)). As a result, such claims are frequently heard during post-conviction proceedings.
 
 Id.
 
 However, the record in this case is sufficient to allow full consideration of Timms’s ineffective-assistance-of-counsel claims.
 

 ¶ 16. In order to prove a claim of ineffective assistance of counsel, an appellant must show “that his attorney’s performance was deficient, and that the deficiency was so substantial as to deprive the defendant of a fair trial.”
 
 Id.
 
 at 1233 (¶ 37) (citing
 
 Strickland v. Washington,
 
 466 U.S. 668, 687-696, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);
 
 Wilcher v. State,
 
 479 So.2d 710, 713 (Miss.1985);
 
 Stringer v. State,
 
 454 So.2d 468, 477 (Miss.1984)).
 

 ¶ 17. The practice of allowing a defendant to stipulate to his status as a previously convicted felon has been strongly endorsed by the United States Supreme Court. Old
 
 Chief v. United States,
 
 519 U.S. 172, 191-92, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). The
 
 Old Chief
 
 court stated:
 

 
 *315
 
 This recognition that the prosecution with its burden of persuasion needs evi-dentiary depth to tell a continuous story has, however, virtually no application when the point at issue is a defendant’s legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him.... The most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possessing a gun, and this point may be made readily in a defendant’s admission and underscored in the court’s jury instructions. Finally, the most obvious reason that the general presumption that the prosecution may choose its evidence is so remote from application here is that proof of the defendant’s status goes to an element entirely outside the natural sequence of what the defendant is charged with thinking and doing to commit the current offense. Proving status without telling exactly why that status was imposed leaves no gap in the story of a defendant’s subsequent criminality, and its demonstration by stipulation or admission neither displaces a chapter from a continuous sequence of conventional evidence nor comes across as an officious substitution, to confuse or offend or provoke reproach.
 

 Given these peculiarities of the element of felony-convict status and of admissions and the like when used to prove it, there is no cognizable difference between the evidentiary significance of an admission and of the legitimately probative component of the official record the prosecution would prefer to place in evidence. For purposes of the [Federal Rule of Evidence] 403 weighing of the probative against the prejudicial, the functions of the competing evidence are distinguishable only by the risk inherent in the one and wholly absent from the other. In this case, as in any other in which the prior conviction is for an offense likely to support conviction on some improper ground, the only reasonable conclusion was that the risk of unfair prejudice did substantially outweigh the discounted probative value of the record of conviction, and it was an abuse of discretion to admit the record when an admission was available. What we have said shows why this will be the general rule when proof of convict status is at issue, just as the prosecutor’s choice will generally survive a Rule 403 analysis when a defendant seeks to force the substitution of an admission for evidence creating a coherent narrative of his thoughts and actions in perpetrating the offense for which he is being tried.
 

 Id.
 
 at 190-92, 117 S.Ct. 644. The Mississippi Supreme Court has addressed
 
 Old Chief
 
 and has come to the following conclusion:
 

 Where evidence of a prior conviction is a necessary element of the crime for which the defendant is on trial (i.e., possession of firearm by a convicted felon), but evidence of the specific nature of the crime for which the defendant was previously convicted (i.e., armed robbery), is not an essential element of the crime for which the defendant is on trial, as it is in DUI cases, the trial court should accept a defendant’s offer to stipulate and grant a limiting instruction.
 

 Williams v. State,
 
 991 So.2d 593, 605-06 (¶ 40) (Miss.2008). In
 
 Williams,
 
 the defendant, who was on trial for possession of a firearm by a convicted felon, offered to stipulate to his status as a convicted felon.
 
 Id.
 
 at 606 (¶ 41). The circuit court refused to allow the stipulation, and our supreme court reversed.
 
 Id.
 

 
 *316
 
 ¶ 18. In the present case, Timms was charged with possession of a firearm by a convicted felon. Timms had previously been convicted of possession of cocaine, a felony. Therefore, Timms was entitled to a stipulation as to his status as a convicted felon. Because the crime of possessing a stolen firearm while a convicted felon does not require any specific evidence as to the nature of the prior felony, the circuit court would have been required to grant Timms a stipulation had he sought one. Of course, Timms’s trial counsel did not seek a stipulation.
 

 ¶ 19. Undoubtedly, trial counsel is not necessarily ineffective for failing to seek a stipulation.
 
 See Williams v. State,
 
 819 So.2d 532, 538 (¶¶ 17-18) (Miss.Ct.App.2001). However, there are several circumstances that make it clear that Timms’s counsel was ineffective for failing to do so. At the outset, we note that it is clear that Timms’s trial counsel was mistaken as to Timms’s criminal history. Timms’s counsel asked Timms and other witnesses about a prior conviction for possession of a stolen firearm; however, Timms had never been convicted of possessing a stolen firearm. He was charged with possession of a stolen firearm, but never convicted of that crime. The State also introduced documents indicating that Timms had been charged with possession of a stolen firearm. However, since Timms was never convicted of possessing a stolen firearm, the jury should have never learned that he was charged with that crime. Timms was especially prejudiced by this inappropriate evidence because of the similarity of his new charges (possession of a firearm by a convicted felon and possession of a stolen firearm) to his prior charge for possession of a stolen firearm. The State’s documents showing Timms’s prior charge should never have been allowed into evidence by his trial counsel; this error was grossly compounded by Timms’s trial counsel’s decision to question repeatedly witnesses about the prior charge as though Timms had been convicted of it. Even Timms’s prior conviction was inaccurately presented at trial. The documents admitted by the State showed that Timms was charged with possession of cocaine enhanced by possession of a stolen firearm. However, it is clear from other documents, such as Timms’s guilty-plea petition, that Timms was actually convicted of possession of cocaine without the firearm enhancement. Timms’s trial counsel again did nothing to prevent this inaccuracy from being presented to the jury. .
 

 ¶ 20. It is clear that Timms’s trial counsel failed to render effective assistance of counsel. Timms’s trial counsel apparently knew nothing of Timms’s actual criminal history, allowed the State to introduce evidence of crimes that Timms had not been convicted of, failed to seek a stipulation as to Timms’s status as a previously convicted felon, and then compounded these errors by questioning Timms and other witnesses as though Timms had been convicted of possessing a stolen firearm when he had not. For these reasons, we reverse and remand for a new trial at which Timms should receive constitutionally effective counsel.
 

 3. Stolen-Firearm Charge
 

 ¶ 21. Timms argues that the circuit court should have sua sponte prevented the introduction of any evidence regarding Timms’s prior charge for possession of a stolen firearm. This issue is moot due to our remand of this case.
 

 A
 
 Cumulative Error
 

 ¶ 22. This issue is also moot due to our reversal and remand of Timms’s case.
 

 ¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF HOLMES COUN
 
 *317
 
 TY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HOLMES COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ„ CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . There is no indication in the record that DeAndre and Phyllis are related.